The Chief Justice
delivered the opinion of the court.
Upon the first ground of demurrer, that the relator is not shown by the alternative writ to be twenty-five years of age, we remark that the title to the office not being by any possibility liable to be controverted in a proceeding of this character, any peculiar qualification prescribed by the Constitution of the United States for members of Congress, can be tried only by the Congress. This proceeding seeks only to procure such certificate as the candidate voted for may be entitled to under the laws of this State,' which certificate is a property which the person obtaining the most votes is authorized by law to demand. Upon this inquiry the right to take and hold the office is not in question, and a slight examination of the rules laid down in the books does not show that such a question has ever been entertained by the courts. Whether the relator possesses all the qualifications necessary to entitle him to a 'seat in Congress, is a matter than can only be inquired into by the House in which he may present a certificate of election.
The relator shows in the pleadings that he is a citizen of this State, and was voted for at the last general election for Representative in Congress from the Second District, and that he received a majority of votes actually cast and duly returned, and that such votes have not been counted in full, so that a certificate of election' is withheld from him. If all this is true, no person other than himself is entitled to the certificate of election, and whether the one or the other is entitled to the seat, cannot be tried before a State court. The question raised, therefore, by the first ground of demurrer is not material in this court. Were this a proceeding under a writ of quo warranto to test the right to a State office, the question of eligibility would be *15 material. The first ground oí demurrer is not sustained. The second ground of demurrer was abandoned upon the hearing.
We proceed then to consider the third ground oí demurrer, involving the only material question before us.
We do not find anywhere in the opinion or judgment of this court in the case of Drew, relator, against the State Canvassers, (16 Fla., 17,) or in any other case decided by this court any expression which will warrant the exclusion by the State Board of a return which is regular, genuine and bona fide, merely because the. board are informed and satisfied that votes cast at a precinct (of which no return was made to the county board) were not included in the return made by county canvassers to the State board. The power of this board “is limited;” (as is expressly stated in the opinion of the court in that-case,) “by the express words of the statute which gives them, being to the signing of a certificate containing the whole number of votes given for each person for each office, and therein declaring the result as shown by the returns.55 The judgment of the board may be invoked to lay aside a county return and omit to include it in the statement and determination of the Tesult of the election, when it shall appear to them that the return is “so irregular, false or fraudulent55 that it does not show the true vote, but does represent votes not cast according to the precinct returns made to them; or, in other words, that the return in the hands of the State board is not made up in good faith from such precinct returns, but is a thing manufactured, an attempted imposition upon the board, or of such character that it represents falsehood instead of the truth, as to the pTecinct returns of vote1* actually cast, and is, for Such reason, not a lawful return of an election.
In the case referred to, the court says: “The words True vote5 (used in the statute) indicate the vote actually cast, as distinct from the legal vote.55 The court was considering whether the power of the board to dissect returns and reject such votes as may have been illegally cast was included in the language of the statute, and it was decided that they had no such power under the statute, and that the power given was confined to a determination as to the character of the return, whether it was regular, genuine, bona fide, a true or false compilation of precinct returns. This power was deemed incident to the character of the office of the canvassers • as created and defined by law, for the protection of the board and the people from the effect of unlawful attempts to palm off upon them forged and “doctored55 papers or wholesale falsehoods. To maintain under our statute that a county canvass based upon votes not cast as a proper return to be counted, would be clearly erroneous.
Is this the character of the return from Madison? Does the return made by the county canvassers of that county bear any of the characteristics that place it among returns that the State board may exclude ? Does it include an}' votes but those actually cast according to the precinct re turns? Is it false as to those returns?
It is not pretended that the county 'canvassers of Madison county have violated the letter or spirit of the law, nor that the return made by them is “irregular, false or fraudulent55 within the meaning of the statute.
The ninth section of chapter 3021 (Daws, of 1877,) amending the twenty-fourth section of the act of 1868, provides that “on the sixth day after any election, or sooner if the returns shall have been received, it shall be the duty of the County Judge and Clerk of the Circuit Court to meet at the office of said Clerk, and to take to their assistance a Justice of the Peace of the county, * * * and they shall publicly proceed to canvass the votes given for the several officers and persons as shown by the returns on file in the office of such Judge and Clerk respectively. Such canvass shall be made solely and entirely from the returns of the precinct inspectors m each election district as filed by them with the County Judge and Clerk of the Circuit Court respectively, and in no case shall the Board of County Canvassers change or vary in any manner the number of votes cast for the' candidates respectively at any of the polling places or precincts in the county, as shown by the returns of the inspectors of such polling places or precincts. They shall compile the result of the election as shown by said inspectors5 returns, and shall then make and sign duplicate certificates, containing in words and figures written at full length, the whole number of votes given for each office, the names of persons for whom such votes were given for such office, and the number of votes given to each person for such office. Such certificates shall be recorded by the clerk in a book to be kept by him for that purpose, and one of such duplicates shall be immediately transmitted by mail to the Secretary of State and the other to the Governor of the State.55
The fourth section of chapter 1868 (Laws of 1872,) requires the State Board of Canvassers to “proceed to canvass the returns of said election, and determine and declare who shall have been elected to any such office, or as such member, as shown by such returns,55 unless the returns are shown to their satisfaction to be vicious, as before stated.
Now, the county canvassers of Madison county have fully and honestly complied with the law. They canvassed and certified- all the votes returned to the Judge and Clerk in due form of law.
The statute required them to perform their duty within a certain time, and they performed it. If precinct inspectors failed to return votes from their precinct, still the county canvassers lawfully proceeded without it. The State canvassers “may be authorized by the Legislature, (as said in the Drew case), to inquire into the truth or falsity of the returns sent to them, and if, upon such inquiry, they be satisfied that the return does not show the vote actually cast at the election, but states a falsehood as to that fact, they may lay it aside and refuse to count the return, as is provided in the act of 1872.55
The county canvassers of Madison county made a return that contains only the truth and not falsehood. There is no pretense that they have made other than a truthful, legal canvass and return of all the votes cast in the county and duly returned to them, and their returns to the State board are regular and intelligible, according to the pleadings in this case.
It was urged in the argument that if there should be in a given county a large number of precincts, and it should happen that the return of one poll only should reach the county canvassers, and this return only canvassed and returned to the State board, it would be absurd to treat this, single poll as a true vote of the county.
This state of things being • made to appear, the State board might well consider that there had been improper conduct on the part of the precinct inspectors or messengers, as they would know that the entire vote of the county had' not been given to the county board. We will not here instruct them as to their duty in such an extreme case. We submit, however, that because one or more precincts may be disfranchised temporarily by rascality or accident, it does not follow that the residue of the voters of the county -should be legally treated in the same manner.
Whether the returns not made would produce a different result of the election would scarcely be determined by a canvassing board, and parties interested would doubtless seek a remedy.
Suppose that at the close of the election at any polling place it should be ascertained that there were one or more *16 ballots found m the box more than there were names on the poll lists, 'and the inspectors, under the law, draw out and destroy a number of ballots equal to the excess, so that the lists and the ballots agree m number, and a return is made of the result, excluding the votes so drawn out and destroyed. Yet it may be proved that these ballots were “actually cast.” On this showing would the return give the vote “actually cast?” I think it would, though it did not show *the entire vote cast. The votes returned were votes actually cast, and the return does not state a falsehood, is not irregular nor a fraud, because it is a lawful return. Yet this return is precisely as false as the return from Mad-isonn county, and with the same propriety should he rejected.
Neither should be rejected, because both are true and according to law.
Under the law and rules heretofore announced by this court upon the subject, the State board can only investigate the good faith and regularity’ of the action of the county board and their certificate, when these are challenged, for their own protection and that of the public, and the due exercise of this power is the only protection against imposition.
The omission of the inspectors of a precinct or polling place to make a return to the county board may occasion inconvenience to parties interested in the vote in a contest before a tribunal competent to hear and decide the right to an office, but it is assuredly not the basis of the imputation of fraud or falsehood against the county returns or the county board.
Under the circumstances, in view of the,.-decision-of this court in the case of Drew, relator, against the State board, the election return of Madison county does not come “under the condemnation” of that decision.
What the court might say if it was alleged by the respondents that a portion of the returns received by the county board from the precincts had been without cause or aibitrarily suppressed, may not be appropriate to .this case, for no such charge is made. But, for myself, I feel bound to say that, in my judgment, the returns made to the State board in 1876, from the county of Clay, should have been counted for Governor Drew by the board, and had an application been made at the moment, looking to that end, I should have ruled in favor of it. The court, in its opinion on that question, said: “Tho answer states that thirty-five votes were added (by the State board) upon the ground that said votes had been improperly rejected by the county canvassers of the vote of Baid county at said election, and that six votes were deducted upon the ground that said votes were cast by non-residents of the county. It follows, from the view we have taken of the law applicable to the powers and duties of the State canvassers, that any state-men| of votes by precinct inspectors which were not included in the canvass made by the canvassing board, cannot be counted by the State board, the powers of the latter being confined by law to counting only such voteB as are duly returned by the county board.”
I understood then as now, that this was a sufficient indication to the State board that the returns from Clay, so far as they gave evidence of “actual votes,” should be counted, there being no alleged evidence of fraud or falsehood as to the returns so made by the county board; but that the precinct returns had been rejected by that board in making the county canvass solely (yet honestly) upon insufficient grounds.
The State board had at first included the Clay county returns in their canvass, embracing not only the votes regularly returned, but also the votes mentioned in the precinct returns which the county board had omitted^ to include in their final return to the State board.
The comments of the court, referring to the Clay county returns, condemned the action of the State board im including the thirty-five votes from the rejected precinct returns, and the court said they could not be counted by the State board, their powers being confined by law to counting only such votes as are duly returned.
It strikes me that if the opinion of the court had been that the regular returns of votes from Clay county should, not he counted, by reason of the omission to include the precinct votes mentioned, the court would have so expressed itself, which it did not do, but used the language above quoted.
But the returns from Madison county are not in the same condition. The canvassing board of Madison counted and duly certified to the State board all the returns made to them; the law above quoted required them so to do without reference to returns they did not have, and the law required the State board to’ count such unimpeached returns.
The demurrer is overruled.