DEEN *et al. v.* TANNER *et al.*

A writ of mandamus, designed to compel the superintendents of an election held in a given county "to consolidate the vote of the county" and perform the other duties prescribed in par. 9 of section 72 of the Political Code, must be directed to all the superintendents who participated in holding such election; and this is true although a number less than the whole may, under the statute, constitute a lawful quorum of the entire body.

Argued November 23, — Decided February 2, 1899.

Mandamus. Before Judge Sweat. Coffee superior court. October 24, 1898.

*C. A. Ward Jr., R. A. Hendricks, F. Willis Dart* and *Spencer R. Atkinson,* for plaintiffs.

*Quincey & McDonald* and *Leon A. Wilson,* for defendants.

LUMPKIN, P. J. At the general election held in this State on the first Wednesday in October, 1898, Elijah Tanner and John Vickers were opposing candidates for the office of representative from Coffee county in the General Assembly, and W. M. Tanner and J. A. Daughtrey were opposing candidates for the office of sheriff of that county. On the day after the election, certain persons who had been election-superintendents at the county-site and at the various precincts met for the purpose of consolidating the vote of the county and making official returns

·of the result. The persons thus assembled did not include all ·of the superintendents by whom the election on the previous day had been held in the county of Coffee. Those present differed among themselves as to whether or not the returns from the "McDonald precinct" had been properly sent up, and, consequently, as to whether or not the same should be considered in consolidating the vote; and as a result, no definite conclusion was reached or final action taken at that meeting. Sub-sequently Elijah Tanner and W. M. Tanner presented to the judge of the superior court a petition for mandamus, by which they sought to compel the making, by the persons who had thus met, of a return based upon a computation of all the votes ·cast at the election, including those polled at the McDonald pre-cinct. The petition alleged that, after the failure to consolidate ·on the day after the election, there had been other meetings of ·election-superintendents, the persons present at which were not identical with those who participated in the first meeting, but that no final action had ever been taken or any lawful returns made. The defendants to this petition, viz., the election superintendents who met on the day after the election, demurred to the petition. Their demurrer alleged, among other things, a non-joinder of defendants, for the reason that, in addition to themselves, there were eight other superintendents of the election (the names of whom were given), clothed with all the powers and privileges vested in the defendants, including the right and duty of being present and participating in the consolidation of the vote, and that these eight additional superintendents were necessary and essential parties defendant to the present proceeding. This demurrer was overruled, a hearing on the merits was had, and a judgment rendered ordering and directing the defendants to meet and consolidate the votes, including those cast at the McDonald precinct. The defendants excepted to the overruling of their demurrer, and also to the judgment rendered in favor of the plaintiffs.

As we are of the opinion that the court should have sustained the demurrer, the merits of the case are not properly before us for adjudication. After very careful and anxious deliberation, our conclusion is that the writ of mandamus should

have been directed to all of the superintendents who partici-
pated in holding the election.    Our statutes bearing upon this·
subject are not as perspicuous as they might be, as will be ob-
served from the following excerpts therefrom.    Section 66 of·
the Political Code declares that: "The persons qualified to
hold such elections are ordinaries, justices of the peace, and free-
holders.    There must be three superintendents, and one must
either be an ordinary or a justice of the peace, except in a cer-
tain contingency hereinafter set forth.    Persons who can not read
and write shall not be competent to serve as managers of elec-
tions in this State."    Paragraphs 7, 8 and 9 of section 72 fur-
nish but meager information concerning the duty of consolida-·
ting the vote and making returns of the result.    They are as·
follows: "When the votes are all counted out, there must be a·
certificate, signed by all of the superintendents, stating the·
number of votes each person voted for received; and each list·
of voters and tally-sheet must have placed thereon the signa-·
ture of the superintendents."    "The superintendents of the
precincts must send their certificates, and all other papers of the
election, including the ballots, under the seal, to the county-·
site for consolidation, in charge of one of their number, which.·
must be delivered there by twelve o'clock m., of the next day.
Such person is allowed two dollars, to be paid out of the county·
treasury, for such service."    "The superintendents, to consoli-·
date the vote of the county, must consist of all those who of-
ficiated at the county-site, or a majority of them, and at least·
one from each precinct.    They shall make and subscribe two
certificates, stating the whole number of votes each person re-
ceived in the county; one of them, together with one list of
voters and one tally-sheet from each place of holding the elec-
tion, shall be sealed up and, without delay, mailed to the Gov-
ernor; the other, with like accompaniments, shall be directed
to the clerk of the superior court of the county, and by him
deposited in his office.    Each of said returns must contain
copies of the original oaths taken by the superintendents at the·
court-house and precincts."    Section 73 provides: "If said·
superintendents do not deliver said lists and accompaniments·
to said clerks within three days from the day of the election,.

they are liable to indictment. Any superintendent of an election, failing to discharge any duty required of him by law, is liable to a like proceeding and penalty."

It is certain, from the foregoing provisions, especially those contained in the section last quoted, that every election superintendent is a competent and qualified person to participate in the consolidation of the vote, and therefore that a full board would consist of all the superintendents. It is provided, however, that a quorum, consisting of at least two of the superintendents who officiated at the county-site and at least one of those who officiated at each precinct, may lawfully consolidate the vote. The law does not point out how the members of this quorum shall be fixed upon or ascertained. It provides no means for the selection of any particular two of the three who acted at the county-site, or of any particular one of a given three who acted at a precinct located elsewhere. On the contrary, the duty of participating in consolidating the vote of the county seems to devolve equally upon each and every one of the superintendents, though a number less than the whole, if each precinct is represented as the statute provides, may make a lawful return. While the law declares that the superintendents of each precinct must send their certificates and all other papers appertaining to the election "to the county-site for consolidation, in charge of one of their number," this by no means excludes the other two from appearing and acting at the county-site in consolidating the vote, or places the duty of so doing exclusively upon the one selected as their messenger to carry up the papers. The duty thus imposed upon this messenger is an entirely distinct one from the duty resting upon all three alike of taking part in the consolidation and making returns of the result. The law provides that the person who carries the election papers to the county-site shall be paid two dollars for this distinct service. The selection of him for this purpose can in no fair sense be said to commission him as the sole representative of the superintendents acting at his precinct; for, in making such selection in conformity with the statute, the other superintendents can not properly be deemed to have forfeited their right to appear and participate in the meeting at the

county-site, nor does the law contain any intimation that they can in this manner relieve themselves of the duty of seeing that returns are made pursuant to the terms of the statute.

It certainly can not be doubted that if there was a total failure on the part of the election superintendents of the county to take any action towards consolidating the vote, the writ of mandamus to compel the performance of this duty would have to be directed to all the superintendents by whom the election for the county was held. This must be so, because no reason can be suggested for seeking to compel the performance of this duty as against any one or more superintendents rather than as against others of them or all of them. Indeed, it might lead to most pernicious results to allow a person interested in the performance of this duty to select at his pleasure the superintendents upon whom he wished the mandamus to operate; for it might be an easy matter to choose out of the whole number those apparently willing to consolidate the returns in accordance with the desires of the petitioner, and therefore not disposed to vigorously defend the proceeding against them or present to the court reasons why the returns should not be made in accordance with the petitioner's wishes. Undoubtedly, when a legal quorum meets and takes final action, it is an end of the matter; but until this has been done, every election superintendent has a right, and is charged with the corresponding duty, to meet with the other superintendents and comply with the requirements of the law. Inasmuch, therefore, as it is the legal duty of each and every superintendent to meet and act, it must follow that when there is a necessity for compelling action, the process of the law should be directed to each and every person upon whom the duty devolves. "The writ should be directed to all the persons whose duty it is to perform the act required, though some of them may be applicants for the writ." 14 Am. & Eng. Enc. L. 219, 220.

The soundness of what is said above can not be seriously questioned. But it is contended that when a quorum of the election superintendents has once met, those present, and they alone, constitute the board for consolidating the vote; and that no other superintendent in the county can, even though no final ac-

tion has been taken by the board as thus composed at the meeting when the same was organized, ever at any time afterwards become a member of it or participate in its deliberations or action. We can not assent to the correctness of this contention. It is contrary to the spirit and genius of our institutions, and is certainly not sustained by anything in our statutes relating to this matter. It seems purely arbitrary to say that a man holding an office, the duties of which he is to perform in connection with others holding a like office, should be deprived of the right, or absolved from the duty, of doing acts required of him by law, simply because he failed to be present upon a single occasion when a quorum of his fellows met but did not actually perform the duty chargeable alike upon all. It happens every day that a quorum of officials meet to transact business when others entitled to participate in the transaction are absent. If those present conclude the work in hand, the absentees are bound by the action taken in the premises; but if the work is not concluded, and at a later period the absentees present themselves, surely it can not be said they can have no voice as regards the unfinished business. A familiar illustration is presented in the case of legislative bodies. For instance, the house of representatives might have under consideration a bill when a dozen or more of its members were not in their seats. If the bill passed by the requisite constitutional majority, its validity, so far as that house was concerned, would be unquestioned. In case the bill was defeated, absentees who would have voted in favor of it would be bound by the result; but if an adjournment took place while the bill was under consideration and before final action had been taken thereon, and on a subsequent day it came up again for consideration, at which time those absent on a previous occasion occupied their seats, no one could question their undoubted right to vote upon the measure.

For the reasons above given, we conclude the demurrer ought to have been sustained and the plaintiffs' petition dismissed. It was fatally defective for want of essential parties, and therefore could not be made the basis of any legal and valid judgment. *Judgment reversed. All the Justices concurring.*