TANNER *et al. v.* DEEN *et al.,* and *vice versa.*

1. Where a justice of the peace and two freeholders meet for the purpose of holding and managing an election at a precinct, and all, at the same time and before entering upon the discharge of their duties, take the oath prescribed by law, and the two freeholders subscribe and the justice of the peace attests the same, this is a sufficient compliance with the statute requiring the superintendents to be sworn before an officer or before each other. Even were this not so, the fact that no one administered the oath to the justice of the peace would not invalidate the election.

2. When, after holding the election but before the votes have all been counted, one of the superintendents leaves the precinct and the other two finish the count and sign the certificates required by law, the returns thus certified to should not be excluded from the consolidation of the vote of the whole county because not signed by all three of the superintendents, nor should they be excluded because one of the superintendents left before the completion of the count.

3. When on the day after the election a portion of the superintendents of all the precincts meet at the court-house for the purpose of consolidating the returns, and they disagree as to whether a certain precinct should be included, and adjourn to a day subsequent, and after meeting on that day still disagree, and some of the candidates apply for a mandamus nisi to compel the superintendents from all the county to meet and consolidate the vote, including the returns from the precinct about which they have disagreed, and the judge grants an order restraining the superintendents from consolidating without such precinct returns, and after this restraining order is granted a majority of the superintendents proceed to consolidate without having the returns from any of the districts, such consolidation is illegal.

4. The superintendents to consolidate the vote of a county, cast in a public election for State and county officers, can not decline to receive and consolidate with the other returns the vote from a precinct because a list of voters from that precinct was delivered at the county-site by a person other than one of the superintendents after twelve o'clock of the day

following the election ; the vote of the county not having been actually consolidated when such list of voters was brought in to the county-site.

5. When such superintendents, at their meeting for the purpose of consolidating the vote of the county, disagree as to whether the vote of such precinct should be counted and fail to consolidate the vote as required by law, upon petition against them, by parties in interest, for mandamus to compel a consolidation of the vote and in such consolidation to include the precinct named, it is the duty of the judge, when no legal reason is shown why the vote at the precinct in question should not be counted, to grant the writ directing the consolidation of the vote of the county, including that embraced in the returns from such precinct. ·

6. In accordance with the foregoing, direction is given that a writ of mandamus be granted in accordance with this decision.

Submitted May 18, — Decided July 19, 1899.

Petition for mandamus. Before Judge Bennet. Coffee county. March 18, 1899.

*Quincey, McDonald & Osteen* and *Leon A. Wilson,* for plaintiffs.
*Ward & Crawley, R. A. Hendricks,* and *F. W. Dart,* for defendants.

SIMMONS, C. J. It appears from the record, that an election was held in the county of Coffee for State and county officers. At the McDonald precinct in that county, a justice of the peace and two freeholders met for the purpose of holding and managing the election. The election was held, and on the next day, as required by law, one of the superintendents carried to the court-house the returns of that precinct. From such returns, however, the list of voters had been omitted. It appears further from the record, that the superintendents for consolidating the returns were composed of two different political parties. The Democratic superintendents objected to counting the McDonald precinct returns, while the Populist superintendents insisted on including them in the count. They finally agreed to adjourn until the following Wednesday, October 12, for the purpose of seeking advice. After this adjournment the list of voters of the McDonald precinct was brought in by one of the Democratic candidates (whose election would not have been affected in any way by the determination of the question as to whether the returns from the McDonald precinct should be counted) and deposited with one of the superintendents. On the twelfth of October the superintendents again met and again

failed to agree. The Democrats claim that a majority of the superintendents agreed to consolidate without including the returns of the McDonald precinct; the Populists deny this, claiming that the vote was a tie. One of the Democratic superintendents took charge of the so-called consolidation. One of the Populist superintendents took all the returns from the county and placed them in a box in a safe to which he alone had the key. This meeting of October twelfth "broke up," according to the record, without adjournment to any other day. In the meantime two of the Populist candidates for office had applied for a mandamus nisi to compel the superintendents of the county to appear at the court-house and consolidate the returns, including those from the McDonald precinct, and praying for an order to restrain the superintendents from consolidating the returns without including those from that precinct. The judge on the next day, the thirteenth, granted the mandamus nisi, and in the same order restrained the superintendents from consolidating the vote until further order of the court. It appears, however, that the Democrats had sent out notice to the Democratic superintendents in the county to meet the next day to consolidate the returns. Thirteen of them, a majority of all the superintendents, met and made a consolidation without any returns, tally-sheets, or lists of voters. This was done after notice to them of the mandamus nisi and the restraining order. The application for mandamus came to this court at the last term on demurrer. See 106 *Ga.* 394. After the case was sent back to the lower court, the petition was amended in accordance with the decision of this court. Upon the trial the judge, after the conclusion of the evidence and the argument, ordered all the superintendents of the county to meet at a certain day and consolidate the vote of the county, but he refused to direct them whether or not to include the returns from the McDonald precinct. To this ruling exception was taken by the applicants for the mandamus, while a cross-bill of exceptions was filed by the respondents. The main and cross-bill will be treated together in this opinion. As the exceptions made in the cross-bill would, if sustained, be vital to the proceeding, we will take them up first.

7

1. On the hearing before the judge, the applicants offered in evidence the returns from the McDonald precinct. They were objected to by the respondents on several grounds, one of them being that all the superintendents of that precinct had not been sworn as required by law. The evidence shows that the justice of the peace and the two freeholders had agreed to hold the election in that precinct on that occasion, and that, before they had entered upon their duties, the justice of the peace read the oath to the freeholders and to himself at the same time. The two freeholders signed the oath, and the justice attested it. The statute authorizes the justice to administer the oath to the other two superintendents, and one of them to administer the oath to him. Under the facts shown in this case, where all took the oath at the same time, with the same object in view, we think there was a sufficient compliance with the statute, and that it was the equivalent of an administration of the oath by the justice to the other two and by them to him at the same time. Even were this not so, the failure of the magistrate to take the oath would not be sufficient to invalidate the election, unless some fraud were shown or suggested. Here, no fraud is shown or suggested at this precinct, and the failure of one of the superintendents to take the prescribed oath would not invalidate the election. *Jossey* v. *Speer*, 107 *Ga.* 828.

2. Another objection made to the admission in evidence of the returns was, that the certificates, which the law requires the superintendents to make, were signed by only two of the three superintendents at the precinct and that the justice of the peace had absented himself before the votes had been finally counted and consolidated for the precinct. The evidence shows that, as a matter of fact, this objection was true, and that the justice of the peace, after all the votes had been cast and before the completion of the count, asked leave of the other two superintendents to return home because the river between the precinct and his home was so high that he could not safely cross after dark. He left, and authorized one Sweat to sign his (the justice's) name to the certificates. This Sweat seems to have done, as the name of the justice appears upon the certificates. We think the court was right in refusing to exclude

the returns from evidence on these grounds. They were admissible even if entirely without the signature of the absent superintendent, treating as entirely without weight the signing by Sweat. Some courts have held that returns should not be rejected even though not signed by any of the election-superintendents, but we think the weight of authority is to the effect that returns should be signed by all or by a majority of the superintendents. See State *v.* Board of State Canvassers, 17 Fla. 29; 10 Am. & Eng. Enc. L. (2d ed.) 739, 740. Were the law otherwise, it would be within the power of one superintendent to withdraw from his duties or refuse to sign the certificate and thus render illegal and void the election in that precinct. If he were a violent partisan and saw the election going against his party, he might refuse to discharge his duty and by this conduct perhaps defeat the will of the people in his district, or in his county, or possibly even in his State. In so far as paragraph 7 of section 72 of the Political Code requires the signatures of all the superintendents, the same should be treated, not as mandatory, but as directory only.

3. As stated in the recital of facts, the convention of superintendents dissolved on the twelfth day of October without any agreement to meet at any specified subsequent day, and two of the candidates for office applied for a mandamus nisi and a restraining order, both of which were granted on the thirteenth of the month. On that day the Democratic superintendents, without any legal notice to the superintendents belonging to the other party, met and attempted to consolidate the vote of the county, with the exception of the McDonald precinct. They had notice of the restraining order and some of them had even acknowledged service thereof at the time of this attempted consolidation. It was shown by the evidence that this consolidation was made by them without having before them any of the returns from any of the precincts. This action on the part of these superintendents amounted to nothing, 1st, because it was done without any notice to the superintendents of the other party and without their knowledge; 2nd, because it was in violation of the restraining order issued by the judge; and 3rd, because it was impossible for them to have consolidated the re-

turns of the county without having such returns before them. For these reasons their certificate to the consolidated returns amounted to nothing, and the judge did not err in finding against the plea of the respondents which set up that the consolidation had been already accomplished.

4. The main bill of exceptions assigns as error the refusal of the judge, when he ordered the consolidation of the returns, to instruct that the returns from the McDonald precinct should be included. We think this exception well taken. While it is true the list of voters did not accompany the returns as prescribed by law, yet the evidence shows that it was inadvertently omitted from the box in which the rest of the returns were inclosed, and that it reached the superintendents before they had completed the consolidation. Indeed it reached them on the night of the first day's meeting at which they had adjourned to the twelfth of October. It was fully identified by one of the superintendents who testified that it had not been altered or changed from the time he and one of the other superintendents signed it. The third superintendent for the precinct, the justice of the peace whose name had been signed to the list of voters by the person authorized to do so by him, was present when it was brought in, and made no objection to it as not being the true list of voters or as not having been signed or agreed to by him. It was also shown to have been sent from the precinct to the court-house by a Democrat who had been sworn to deliver it safely. It was also shown that, while the bearer of the list of voters was a candidate for an office at that election, his election could not have been affected by either including or rejecting the McDonald precinct returns. There was no suggestion of fraud in not inclosing the list with the rest of the returns, and no claim that it had been in any way tampered with after having been signed by the superintendents. Under this state of facts, we think that the superintendents had no right or power to reject this list of voters or to refuse to consolidate the returns from the McDonald precinct. The list was omitted from the returns by mere inadvertence or mistake, and it would be wrong, on such a technicality, to deprive the voters of the entire district of their franchises. The

right to vote is one of the highest privileges possessed by the citizens of this country, and no mere irregularity of this character, unattended by fraud, should deprive them of this right. Had the list of voters not been signed at all and the superintendents of the election in that precinct been present when the list reached the consolidating board, the superintendents should have been allowed then and there to attach their signatures to the certificate. As the list of voters was signed by at least two of the three superintendents, it was legally sufficient when presented to the consolidating board before it had concluded its labors.

5. The disagreement in the convention arose from the refusal of the majority of the superintendents to include in the consolidation the returns from the McDonald precinct. It will be observed from the foregoing discussion, that most if not all the points made against the validity of these returns involved questions of law only. These superintendents were not selected for their knowledge of the law, and even had they been lawyers they might have disagreed among themselves as to the questions of law above discussed. While the trial judge did right in ordering the superintendents to reassemble to consolidate the vote, he erred in not deciding the question as to whether these returns were legal, and in not instructing the superintendents to include them in their consolidation. What would be the use of having these same men to reassemble to go through another day's partisan contention, and perhaps at last be unable to consolidate because of differences in their views as to the legality of these returns? While it is true that courts should not by mandamus compel a body to do anything in regard to which its members have the right to exercise a discretion, yet we think in a case like this it is the duty of the court to instruct the superintendents whether or not a certain return, about which they have been divided in opinion, should be included in their consolidation. In the case of State ex rel. Metcalf v. Garesche, 65 Mo. 480, it was said: "Can the circuit court, in a proceeding by mandamus to compel such canvassing officers to count the vote certified by the judges and clerks of election, determine for them which is the vote so certified?

This is the precise question presented by the appeal. We think it can. If it can not, a proceeding by mandamus, in such a case, must be entirely nugatory. A peremptory writ of mandamus simply to count the vote certified by the judges and clerks, without ascertaining which was the vote so certified, would be a mere brutem fulmen, as it could never be determined, from a certificate of obedience, whether the writ had in fact ever been obeyed. If it be left to the canvassers to determine what the true return is, no attachment for a violation of the writ, in that regard, could ever issue; for the court could never determine that its writ had been violated, without first deciding what vote should have been counted. The object of the writ in the present case was to compel the counting of the true return; the writ could not issue until there had been a failure or refusal to count such return, and no such failure or refusal could be found to exist, until the court had determined which was the true return." In Wood on Mandamus (2d ed.), 53, it is said: "A mandamus may issue compelling the board to include such returns notwithstanding that supposed defect, leaving it for the election tribunal, upon the report of the board, to decide whether the defect is fatal. Though the command to include these might be considered to be a command to do a particular act—make the canvass—in a particular way, yet that is no objection to the mandamus, since here the manner of doing is of the essence of the deed, and is regulated by statute, and not left to the discretion of the party performing." See also State ex rel. Bloxham *v*. Gibbs, 13 Fla. 55, 7 Am. Rep. 233; Lewis *v*. Commissioners, 16 Kans. 102, 22 Am. Rep. 275.

6. For these reasons we think the court erred in not instructing the superintendents to count the returns from the McDonald precinct; and direction is accordingly given that a writ of mandamus be granted requiring the superintendents to reassemble on a named day and consolidate the vote of the county, including the returns from the McDonald precinct.

*Judgment on main bill of exceptions reversed, with directions; on cross-bill, affirmed. All the Justices concurring.*