## MORRIS *v.* GLOVER *et al.*

1. The local act approved February 29, 1876 (Acts of 1876, p. 322), providing for the consolidation of the office of county treasurer of Cobb county with the office of clerk of the superior court of that county, making the clerk ex-officio treasurer and fixing his fees, is unconstitutional and wholly in-

operative, in that, under the constitution of 1868, the General Assembly was. without power to expressly abolish the office of county treasurer, or to accomplish the same result by indirection, by depriving the treasurer of the emoluments of that office and transferring the duties thereof to the clerk of the superior court.    Decision in *Massenburg* v. *Commissioners,* 96 *Ga.* 614, approved and followed; dictum in *Hall* v. *Burks,* Id. 622, disapproved.

2. Mandamus, and not a proceeding to contest an election, is the remedy of one who was the sole candidate for a particular office but who was ignored by the board of canvassers, the members of which refused to consolidate the votes cast in his favor or to declare any result, so far as that office was concerned.

3. Where a board of canvassers has dissolved before properly performing its functions, its members may, by mandamus, be compelled to reconvene and recanvass the votes in accordance with the direction of a court having jurisdiction of the subject-matter.

Argued January 9,—Decided January 28, 1905.

Petition for mandamus.    Before Judge Lumpkin.    Cobb superior court.    November 12, 1904.

This was a mandamus proceeding instituted by J. Gid. Morris, who claims to have been duly elected treasurer of the County of Cobb at an election for county officers held in that county on October 5, 1904.    The purpose of the proceeding was to compel the superintendents of that election, who were named in the plaintiff's petition as defendants, to consolidate the votes cast in his favor as county treasurer, for which office he was the only candidate, and to certify the result and make proper return thereof. The defendants filed a demurrer to the petition, in which they set forth their contention that " There is no such office as treasurer of Cobb county, separate, apart, and distinct from the office of the clerk of the superior court of said county," the office of treasurer having been consolidated with that of clerk of the superior court by an act of the legislature approved February 29, 1876, " whereby all the duties required to be performed by the treasurer of said county were devolved upon the clerk of the superior court of said county, and whereby said clerk became ex-officio treasurer of said county."    On the hearing of the demurrer the court sustained this contention of the defendants, holding that the local act relied on by them was not, for any of the reasons urged by the plaintiff, inoperative and of no effect.    To the judgment dismissing his petition on demurrer the plaintiff duly excepted.    The main attack made on this local act is that it is unconstitutional, in that the legislature sought by indirection to abolish one of the county

offices recognized by the constitution of 1868, by devolving the duties of the office of treasurer upon the clerk of the superior court and styling him ex-officio treasurer, which it was not within the power of the General Assembly to do.

*N. A. Morris* and *Rosser & Brandon*, for plaintiff.

*J. Z. Foster*, for defendants.

Evans, J. (After stating the facts.) 1. The controlling question is the constitutionality of the act approved February 29, 1876 (Acts of 1876, p. 322), consolidating the office of county treasurer of the County of Cobb with the office of clerk of the superior court of that county, making the clerk ex-officio treasurer and fixing his fees. The act is alleged to be violative of article 9, section 1, of the constitution of 1868, in force at the time of its passage. This article and section of the constitution provide that: "The county officers recognized as existing by the laws of this State, and not abolished by this constitution, shall, where not otherwise provided for in this constitution, be elected by the qualified voters of their respective counties or districts, and shall hold their offices for two years. They shall be removable, on conviction, for malpractice in office, or on the address of two thirds of the Senate." This clause of the constitution was construed in *Massenburg* v. *Commissioners of Bibb County*, 96 *Ga.* 614, and it was there ruled that: "The office of county treasurer having been, under the law existing previous to the adoption of the constitution of 1868, recognized as a county office, and that office not having been abolished, but, on the contrary, recognized by that constitution, it became and was thereby established as a constitutional office, and could not thereafter, while that constitution was of force, be abolished by an act of the legislature." The contention of the plaintiff in error is that the local act (Acts of 1876, 322) consolidating the office of county treasurer with the office of clerk of the superior court is, in effect, the abolition of the office of county treasurer, and is therefore void.

It was expressly held in *Massenburg* v. *Commissioners*, supra, that it is incompetent for the legislature to directly abolish a constitutional office. Can the legislature, by indirection, accomplish what it is restrained from doing by the organic law of the land? Among the incidents of public office are the discharge of its duties

. 48

and the enjoyment of its emoluments by the individual entitled to the office.    At the time of the ratification of the constitution, the duties of the office of county treasurer were discharged by an individual elected by the people for a definite term, invested by law with all the rights and duties appertaining to this office.    He was styled the county treasurer, and was included among the county officers embraced in the section of the constitution which provided for the future election and prescribed the tenure of service of certain county officials whose offices had theretofore been lawfully created.    The county treasurer held a separate and distinct office, expressly recognized by the constitution ; he was an officer declared by that instrument to be a county official who was to be elected by the people for a term of two years.    If the duties and emoluments of his office be transferred to another officer, then there would exist the anomalous condition of an officer recognized by the constitution without duties or emoluments.    The duties and emoluments are of the substance of the office ; its name but the semblance.    If the legislature may consolidate the office of treasurer with that of the clerk of the court, why should not the authority be extended to consolidating the other county offices, so that the clerk might, ex officio, discharge the duties of all county officers ?    There is no more reason why the clerk, with legislative sanction, should be ex-officio treasurer, than there is that he should also be, at the will of the General Assembly, ex-officio tax-receiver, tax-collector, and sheriff.    It can not be seriously contended that the framers of the constitution, by express recognition of separate and distinct offices, with separate and distinct functions, contemplated that the legislature might devolve the duties of two or more offices upon one functionary.    In those governments where the lawmaking power is not fettered by a written constitution limiting its authority, offices may be created, consolidated, or abolished, at legislative will.    Likewise, an office created by statute, but not defined in or recognized by the constitution, may be abrogated by statute.    But where an office is created or guarded by express constitutional provision, its scope can not be enlarged or lessened by statute, nor can the office be filled in any manner other than that prescribed by the constitution.    People *v.* Bollam, 54 N. E . 1032.    When the legislature assumed to transfer to the clerk of the superior court all the duties and emolu-

ments which belonged to the office of treasurer, it practically abolished the office of treasurer. There is no recognition in the statute of such an official as a county treasurer; the functions of his office are to be discharged by the clerk, virtute officii. It has been held that the taking away of the salary amounts to the abolition of the office. Reid v. Smoulter, 18 Atl. 445. If the withdrawal of the emoluments will accomplish this result, a fortiori the transfer of both compensation and duties to another official would have the same effect. See Throop on Pub. Off. § 20.

The clerk of the court, by this local act, is treasurer of the County of Cobb, or the office of treasurer is extinct. If the clerk is the treasurer, and should be guilty of malpractice in the administration of the functions pertaining to the office of treasurer, could he be removed from the office of clerk of the superior court for such malpractice? Would it not be a good reply for the clerk to say, "I have faithfully discharged my duties as clerk, and my malfeasance as treasurer can not forfeit my office as clerk"? The act declares that the clerk is ex-officio treasurer. If this means that his office is that of "clerk" and that his duties comprehend both the duties of clerk and those of county treasurer, then he is not the treasurer, and no such office as county treasurer longer exists. If he is both clerk and treasurer, a malfeasance in the office of treasurer would not justify his expulsion from the office of clerk. Yet the constitution declares that a county officer is removable, "on conviction, for malpractice in office." Therefore, should the clerk embezzle funds received as county treasurer, he might escape the constitutional penalty of removal from office.

The constitution of 1868 bears internal evidence of the construction that each constitutional office should be filled by a separate individual. Article 3, sec. 1, par. 4, provides that no person holding a military commission or other appointment or office having any emolument or compensation annexed thereto, under this State or the United States, or either of them, except justices of the peace and officers of the militia, shall have a seat in either house of the General Assembly. The office of justice of the peace is a constitutional office, and to entitle the holder of that office to a seat in the General Assembly the framers of the constitution deemed it necessary to make an express exception. The case of Hall v. Burks, 96 Ga. 622, is apparently antagonistic to the con-

clusion we have reached in this case. In that case it was said that it " was, under the constitution of 1868, competent and constitutional for the General Assembly to pass an act ' consolidating ' the offices of clerk of the superior court and treasurer of a given county, to the extent of devolving the duties of the treasurer upon the clerk and making the latter ex-officio treasurer." This dictum of the court was clearly obiter, as will be seen from an examination of the report of the case, as well as from the transcript of the record on file in the office of the clerk of this court. The assignment of error was that the trial judge erred in not sustaining the contention of the plaintiff that the act of February 28, 1876 (Acts of 1876, p. 325), "abolishing the office of county treasurer and vesting the clerk of the superior court with the duties of treasurer, was and is unconstitutional and illegal, and can not have the effect of depriving him of said office, because both the constitution of 1868 and 1877 provides for the uniformity of the laws and offices of the State, and this local act destroys that uniformity by abolishing the office of treasurer in Dougherty county and not in the whole State; and because, at the time of the passage of said local act and now, the general law of the State provided that no other officer should be county treasurer, and this local act is in variance with said general law and is therefore unconstitutional and illegal. Sec. 5027 and 5228 Constitution of 1877, and Code 1882 Sec. 542 & 546; Constitution 1868, Sec. 5018 & 5140; and Code 1873, Sec. 542 & 546." The attack made on this local act was that it was violative of a constitutional provision requiring that all laws affecting public office should have uniform operation throughout the State, and that it was special legislation upon a subject-matter for which provision had been made by an existing general law. Such was the meaning placed on the assignment of error by this court at the time, as will appear from the statement of the case in the official report; and this interpretation of the assignment of error was correct. The local act was not unconstitutional for the reasons assigned, because the constitution of 1868 contained no inhibition against special legislation in given cases, as does the constitution now of force. Civil Code, § 5732. The court very properly held that the local law was not unconstitutional because of the objections then urged against it, but the unguarded statement that it was, under the constitution of 1868,

competent for the General Assembly to pass an act of this kind, consolidating two county offices, was altogether too broad. "This court has no authority to decide any question on any writ of error, unless there are in the bill of exceptions 'plainly and specifically set forth the errors alleged to have been committed,' and a 'special assignment of error' raising the question." *Kelly* v. *Strouse,* 116 *Ga.* 874 (9). The ruling announced in *Hall* v. *Burks* can not be extended beyond the adjudication of the questions made by the above-quoted assignment of error, and the proposition stated in the first headnote to that case is, so far as it concerns the question now presented for decision, mere obiter dictum and not a binding adjudication thereof.

2. The plaintiff's petition was demurred to on the further ground that if he had sustained any wrong, he had "a complete and adequate remedy by a proceeding to contest said election." The allegations of the petition disclose that the plaintiff was the only candidate for the office of treasurer, and that he received 193 votes. While some of the votes cast for the candidate who was running for the office of clerk read "for clerk and county treasurer," no ballots were cast for him "as treasurer," and he was not a candidate for the office of treasurer. Clearly, therefore, a contest was out of the question. The plaintiff sought by mandamus merely to require the managers of the election to properly consolidate the returns and declare the result. This was the remedy to be pursued. *Tanner* v. *Deen,* 108 *Ga.* 95.

3. The defendants also made the point that, as disclosed by the petition, the managers of the election had met, consolidated the returns, and adjourned sine die, long before the bringing of the present proceeding, and could not be reassembled at the instance of petitioner for the purpose of consolidating the returns in accordance with any order which the court might pass. Though the power of a court to compel, by mandamus, a board of canvassers to reconvene and recanvass the votes in accordance with its directions has been called into question, the weight of authority is that this may be done. See 10 Am. & Eng. Enc. L. (2d ed.) 808, and cit. This court, in *Tanner* v. *Deen,* supra, held that the remedy of mandamus could not be defeated simply because the returning board had dissolved before properly performing its functions.

*Judgment reversed. All the Justices concur.*