COPLAND *v.* WOHLWENDER.

No. 14833. MAY 3, 1944. REHEARING DENIED JUNE 9, 1944.

*Shelton & Pharr,* for plaintiff.

*Monroe Stephens,* for person at interest, not party.

*Powell, Goldstein, Frazer & Murphy,* for defendant.

WYATT, Justice. ■ Monroe Stephens filed in this case a "motion to dismiss the alleged bill of exceptions." The motion is based upon certain contentions with reference to the manner in which the bill of exceptions was served. The motion contains the contention that "Monroe Stephens was a party to the case below." The record fails, however, to disclose that he was in any manner such a party. In fact, his name does not appear anywhere in the record except in the motion to dismiss. Therefore, according to the record, he was not and is not a party to this case, and his motion to dismiss cannot be considered.

■ Copland, the plaintiff in error, claims title to the office under the contention that he was elected thereto at the general election of August 3, 1943. Wohlwender, the defendant in error, claims title by virtue of his appointment by the Governor, made on November 23, 1942, to fill a vacancy caused by the resignation of the then incumbent solicitor-general.

Article 6, section 11, paragraph 1, of the constitution of Georgia (Code, § 2-3901) provides: "There shall be a solicitor-general for each judicial circuit, whose official term (except to fill a vacancy) shall be four years. The successors of present and subsequent incumbents shall be elected by the electors of the whole State, qualified to vote for members of the General Assembly, at the general election held next preceding the expiration of their respective terms. Every vacancy occasioned by death, resignation, or other cause shall be filled, by appointment of the Governor, until the first day of January after the general election held next after the expiration of 30 days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected: provided, that the successors for all incumbents whose terms expire on or before the first day of January, 1899, shall be elected by the General Assembly at its session for 1898, for the full term of four years." Under this provision of the constitution there can be no question about the proposition that, when a solicitor-general resigns, the Governor is authorized to make an appointment. The question is, how long or until what time does the person thus appointed hold office? The answer to this question

is to be found in the above-quoted provision of the constitution, "until the first day of January after the general election held next after the expiration of 30 days from the time such vacancy occurs." In the instant case, this date would be January 1, 1944, provided the election held on August 3, 1943, was a general election; and provided further it was a general election at which a solicitor-general could be elected to fill a vacancy caused by resignation.

The act of the legislature under which the election of August 3, 1943, was held provides, so far as is here pertinent, as follows: "Section 1. In addition to the general election created under and by virtue of an act approved August 14, 1914 (Acts 1914, pp. 47-48), there is hereby created and established a State-wide general election to be known as the August general election, which shall be held biennially on Tuesday after the first Monday in August, beginning on the above date in 1943, which election shall be held in the same manner, with the same formality, and in accordance with all rules and regulations in existence in holding the November general election, and which August general election shall be held in every county and every militia district therein in the State for the purpose hereinafter specified in detail in this act. Section 2. The August general election herein created is hereby designated as being the election in which vacancies shall be filled in any and all State and county offices, which vacancies may have occurred by reason of the death or resignation of the incumbent or nominee therefor, or otherwise, since the last preceding general election, except that special elections to fill vacancies may still be held under and pursuant to Chapter 34-17 of the 1933 Code of Georgia, whenever such special election may be more expedient, and may best serve the interest of the State or any county thereof, by filling any such vacancy at an earlier date than is provided for in this section." Ga. L. 1943, p. 535. Whether or not the election provided for in the above-quoted act was a general election, has been settled by this court. In 1937 the General Assembly enacted a law providing for a general election in June. Ga. L. 1937, p. 712. The language in the act of 1937 is identical with that in the act of 1943, now under consideration, except as to the date of holding the election. In *Aycock* v. *State ex rel. Boykin,* 184 *Ga.* 709, 718 (193 S. E. 580), after a very thorough discussion, this court said: "In the light of what has been said, the election held under the

provisions of the above-quoted act is a general election within the meaning of the constitution."

We now consider whether or not the general election of August, 1943, was such a general election as authorized a solicitor-general to be elected to fill out an unexpired term, the Governor having previously made an appointment to fill the office. The general policy of the law of this State is that the office of solicitor-general is an elective office; an appointment made by the executive shall be for such period of time only as is necessary to fill the office until the people can legally elect a solicitor-general. The constitutional provision first quoted in this opinion limits the term of an appointee of the Governor to fill a vacancy in this office to that period of time from the date of appointment until the first day of January after the general election held next after the expiration of 30 days from the time such vacancy occurs, "at which election a successor for the unexpired term shall be elected." There seems to be no attempt in this constitutional provision with reference to solicitors-general to identify or designate any general election at which "present and subsequent incumbents" shall be elected, except the general election held "next preceding the expiration of their respective terms." Likewise there is no attempt to identify or designate any general election, at which a successor shall be elected in case of a vacancy, other than "the general election held next after the expiration of 30 days from the time such vacancy occurs." This is not true, as we shall point out later in this opinion, as to other elective officials, considered by this court in cases heretofore considered when the law now under consideration was construed. The election of August 3, 1943, was a general election. Was the general election held next after the expiration of 30 days from the date a vacancy occurred in the office of the solicitor-general of the Chattahoochee circuit? The petition alleged that Copland was the successful candidate. All this being true, as must be conceded as against a general demurrer, Copland was entitled to the office as of January 1, 1944.

■ It is contended by the defendant in error that the August general-election law applies to filling vacancies in office, and that since the Governor had filled the vacancy by appointment there was no vacancy. The answer to this contention is that the Governor generally appoints to fill a vacancy *in office*. Elections fill

vacancies *in term*. This distinction is clearly made by the opinion of Justices Bell, Jenkins, and Grice in the case of *Mitchell* v. *Pittman*, 184 *Ga.* 877 (194 S. E. 369).

It is further contended in the brief of the defendant in error, "that to give it (the act of 1943) the construction which will support the relator's claim to the office, will make it retrospective in operation, and this should not be done unless the language used imperatively requires it." There is no merit in this contention. The law in this State is well settled that an incumbent in a public office has no such vested right as will entitle him to complain of legislation affecting the office, upon the ground that it is retrospective, where no other right under the constitution is violated. We deem it necessary to cite only a few of the many decisions of this court to this effect. See *Collins* v. *Russell*, 107 *Ga.* 423 (33 S. E. 444); *Mills* v. *Geer*, 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934); *Gray* v. *McLendon*, 134 *Ga.* 224 (67 S. E. 859); *City of Darien* v. *Clancy*, 167 *Ga.* 848 (146 S. E. 767).

■ It is insisted that the Code, § 24-2903, is controlling. This section provides that "vacancies occur and are filled as prescribed in cases of the judges of the superior courts, and the manner of proceeding is in every respect the same." This section of the Code is a part of the chapter dealing with solicitors-general. If this Code section is in conflict with the provisions of the constitution relative to filling vacancies in the office of solicitors-general, it must yield to the constitution. "The provisions of the constitution are fundamental and controlling." *Wood* v. *Arnall*, 189 *Ga.* 362 (6 S. E. 2d, 722). Therefore this Code section is not applicable to the case under consideration.

■ The defendant in error argues that this case is controlled by the decisions in *Mitchell* v. *Pittman*, supra, *Wood* v. *Arnall*, supra, *Stephens* v. *Reid*, 189 *Ga.* 372 (6 S. E. 2d, 728), and *Brackett* v. *Etheridge*, 190 *Ga.* 216 (9 S. E. 2d, 275). In *Mitchell* v. *Pittman*, where the court was evenly divided in opinion, the facts were altogether different from the facts in the instant case, as will appear by reference to those set forth in the present opinion. The office there dealt with was that of a superior court judge. *Brackett* v. *Etheridge*, was likewise a case dealing with the office of a judge of the Superior Court. This court in those cases dealt with art. 6, sec. 3, par. 2, of the constitution (Code, § 2-3102),

providing that, "The successors to the present and subsequent incumbents shall be elected by the electors entitled to vote for members of the General Assembly of the whole State, at the general election held for such members, next preceding the expiration of their respective terms;" and with art. 6, sec. 3, par. 3 (Code, § 2-3103), providing that, "Every vacancy occasioned by death, resignation, or other cause shall be filled by appointment of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected." It was there held that, when these provisions are construed together, they give to the language, "the general election held next after the expiration of thirty days from the time such vacancy occurs," the meaning, a "general election" held for the election of members of the General Assembly. This excluded the June election there under consideration.

The office under consideration in *Wood* v. *Arnall* was that of attorney-general. In that case this court said: "Article 6, section 10, paragraph 1, of the constitution of this State (Code, § 2-3801) provides that there shall be an attorney-general of this State, who shall be elected by the people at the same time, for the same term, and in the same manner as the Governor. Under this provision, considered with the constitutional amendment of 1932, as to inauguration of Governor and statehouse officers, whose terms run concurrently with that of the Governor (Code, § 2-1503), the regular method of electing an attorney-general would include ascertainment and declaration of the result by the General Assembly as provided by the constitution for election of Governor." This excluded the June election there under consideration.

The office under consideration in *Stephens* v. *Reid* was that of Chief Justice of the Supreme Court of Georgia. This court said: "As we have pointed out, if no vacancy exists in the office of Chief Justice and the Associate Justices of this court, they are elected by the people at the same time and in the same manner as the Governor and the statehouse officers are elected. The day of holding such election shall be the Tuesday after the first Monday in November in the even-numbered years. Code, §§ 34-1301, 34-1302, 40-101, 40-501, 40-901, 40-1401, 40-1601." Thus the June election was excluded.

The cases relied on by the defendant in error were all bottomed upon the proposition that the term "general election," when used to designate the general election at which a vacancy in office should be filled by an election, after the executive had made an appointment, should be construed to mean a general election at which the officer in question could be regularly elected if no vacancy occurred. The June election then under consideration was held not to be such an election, because superior court judges could be elected only at elections when members of the General Assembly were elected; and the Attorney-General and the Chief Justice of this court could be elected only at the time when the Governor and statehouse officers are elected. As we have pointed out, this is not true as to solicitors-general. The election at which these officers may be elected is simply a "general election," without any effort to designate any particular general election. The August election now under consideration was a general election. If we should construe the "general election" at which a successor can be elected to fill a vacancy in the office of solicitor-general to be limited to the general election "next preceding the expiration of their respective terms," such a narrow construction of this language would have the effect of rendering meaningless the provision of the law for the election of a successor to a solicitor-general in case of a vacancy in office. This is true for the reason that such a construction would mean that in no event could there be an election to fill a vacancy in the office of solicitor-general until the November next preceding December 31st of the year when the expiration of the term in office to be filled occurs. We think that the language, "next preceding the expiration of their respective terms," was intended to designate the election at which solicitors-general should be elected for the full term of four years, and was not intended to designate the general election at which a successor should be elected in case of a vacancy.

It follows that a vacancy in the office of solicitor-general, such as is now under consideration, was properly submitted to the voters at the general election held on August 3, 1943; and that the successful candidate in this election was entitled to the office from January 1, 1944, to January 1, 1945.

The judgment sustaining the general demurrer was error.

*Judgment reversed   All the Justices concur, except*

BELL, Chief Justice, dissenting in part. I concur in the ruling on the motion to dismiss the writ of error. As to the principal question, however, my views are not in accord with those of my esteemed colleagues.

The case turns on a proper construction of the constitutional amendments of 1898 in reference to the election of superior court judges and solicitors-general. I readily concede that, even in my view, the question of law is a close one, that there is room for reasonable minds to differ, and I believe my associates will in like manner concede at least that there is room for such difference.

I fully agree also that the case is not controlled by any of the following cases dealing with the former June election, which was the same in character as the present August general election: *Wood* v. *Arnall*, 189 *Ga.* 362 (supra); *Stephens* v. *Reid*, 189 *Ga.* 372 (supra); *Brackett* v. *Etheridge*, 190 *Ga.* 216 (supra); the last-mentioned case involving the office of judge of the superior court. Other cases were cited in the briefs, but these three seem to be the ones most strongly relied on by the defendant in error.

All these cases related to offices other than that of solicitor-general, and depended on constitutional provisions other than those here under consideration. I do think, however, that a part of the reasoning in both *Stephens* v. *Reid* and *Brackett* v. *Etheridge* is relevant here; and that when certain well-settled rules of construction are added, the August general election should be held inapplicable to the office of solicitor-general.

In construing any law, organic or otherwise, we should keep in view at all times the old law, the evil, and the remedy; and therefore it is pertinent to inquire briefly as to what was the former law applicable to the office of solicitor-general.

Under the original constitution of 1877, to which the amendments of 1898 were annexed, the offices of judge of the superior court and solicitor-general were treated alike as to the times and manner of election, both for full terms and for vacancies. An examination further discloses that the same was true under each of the three next preceding constitutions, namely, the constitutions of 1861, 1865, and 1868; notwithstanding the manner of election applicable to both varied under the different constitutions.

Under the constitution of 1877, before the amendments of 1898, both offices were filled by election by the General Assembly, for

full terms and for vacancies, except that vacancies in both would be filled by the Governor until the General Assembly should next convene. Matters stood thus until October, 1898, when the people adopted amendments proposed in 1897, providing for the election of judges and solicitors-general by the people, and prescribing the method of filling vacancies. While there were three proposals, resulting in three amendments, they were all contained in a single resolution, and under a single caption reading as follows:

"An act to amend paragraphs 2 and 3 of section 3 of article 6, and paragraph 1 of section 11 of article 6, of the constitution of this State, so as to provide for the election of judges of the superior courts and solicitors-general by the electors of the whole State." Ga. L. 1897, p. 16.

These three amendments now appear in the Code, as follows: § 2-3102, providing for election of judges by the people for full terms; § 2-3103, providing for filling vacancies in that office; and § 2-3901, providing for filling the office of solicitor-general, both for full terms and for vacancies.

There is no difference in language as between the two offices so far as the filling of vacancies is concerned, and the only appreciable difference as to elections for full terms is that the provision as to judges contains the words, "at the general election held for such members," that is, members of the General Assembly, while as to solicitors-general the three words, "for such members," are omitted.

We held in *Brackett* v. *Etheridge,* supra, that the first two amendments (as to judges) should be construed together, and ruled in effect that the words, "for such members," as found in the first amendment, relating to elections of judges for full terms should be implied in the second, relating to vacancies in the same office; in other words, that the provision as to vacancies meant the same type of general election that had just been provided for filling a full term, although the words, "for such members," did not appear in the latter provision. The question here is, whether the words, "for such members," shall be implied in both provisions as to solicitors-general, just as they had been implied in the second provision as to judges. I think that all of these provisions should be construed together, especially as they were all proposed in the same resolution; and that the intended election for solicitors-general, whether for full terms or vacancies, would likewise be a general election held for members of the General Assembly.

While the two offices are different and the language of the constitution relating to them also differs to the extent noted, yet in view of the former law, under which both offices were considered' in the same category for a long period, it seems to me that the only purpose of the amendments of 1898 was to transfer the power of election from the General Assembly to the people, as to both offices, and that they did not have in view any separation of these offices as to the method of election. That such was their only purpose is strongly indicated by the caption above quoted, which may be considered, since the matter of construction is not otherwise entirely clear. In *Stephens* v. *Reid,* supra, it was said that the primary object of the amendment of 1896, relating to Justices of the Supreme Court, was to withdraw the elective power from the General Assembly and lodge it in the people. The caption here expressly states but one purpose, "to provide for the election of judges and solicitors-general by the electors of the whole State," and does not within itself suggest any other purpose.

Although it might have been thought better to have these officers elected by the people, I cannot readily imagine any "evil" that might have been deemed to exist in filling the offices of judge and solicitor-general at the same relative times and in the same manner, either for full terms or for vacancies; and it would seem that the slight variation in language should not lead to the conclusion that different types of election were intended or would be permissible. Compare *Hirsch* v. *Shepherd Lumber Corp.,* 194 *Ga.* 113 (20 S. E. 2d, 575). If, instead of a mere omission, the provision had contained language showing affirmatively a different intention, such intention would of course control.

In the view I take of the case, it is unnecessary to notice the statute that has appeared in all the Codes, from 1863 to 1933, declaring that vacancies in the office of solicitor-general shall be filled in the same manner in every respect as prescribed in cases of judges of the superior court. Code of 1863, § 348; Code of 1933, § 24-2903. I may say, however, that I think the constitutional amendments in question should be construed, in the light of such statute, as expressing a general policy of long standing, to treat the two offices the same in every respect even as to filling vacancies. This statute was consistent with all of the constitutions above mentioned, and I regard it also as being consistent with the

amendments of 1898. If so, it remained a valid statute, and was not repealed by implication by the August general-election act of 1943. *Davis* v. *Dougherty Co.*, 116 *Ga.* 491 (42 S. E. 764); *Cornwell* v. *Atlanta Trust Co.*, 177 *Ga.* 303 (170 S. E. 194). But this merely goes back to the main question, and need not be further pursued.

The views herein expressed are in perfect harmony with the opinion in which the present writer participated with Justices Jenkins and Grice in *Mitchell* v. *Pittman*, 184 *Ga.* 878, 891 (supra), where the incumbent was holding over after another had been elected for a full term, but where the latter died, after his election, before qualifying. In such circumstances, the provision for the election of judges for full terms at the general election next preceding the expiration of their terms would never have become applicable, because the only general election for members of the General Assembly which could ever be held next preceding the expiration of the incumbent's four-year term had already passed and another had been elected at that election. Nor would the provision as to filling a vacancy ever have become applicable, because that election would apply only where a vacancy had been filled by appointment by the Governor. In the circumstances there was a hiatus, in that the constitution had provided for no situation such as had developed under the facts of that case, and therefore it was the view of the three Justices mentioned, including the present writer, that the statute creating the then June general election applied. This statement will show also that the view so taken by them was in complete harmony with the decision in the later case of *Brackett* v. *Etheridge*, supra, in which they concurred.

For the reasons stated, it is my opinion that the August general election of 1943 did not apply to the office of solicitor-general, and that the tenure of the incumbent was not affected by the declared result of such election.