310 Ga. 104
FINAL COPY

S21Q0068. KEMP et al. v. GONZALEZ et al.

MELTON, Chief Justice.

This election case comes before us based on the following certified question submitted to this Court by the United States Court of Appeals for the Eleventh Circuit:

> Does OCGA § 45-5-3.2 conflict with Georgia Constitution Article VI, Section VIII, Paragraph I (a) (or any other provision) of the Georgia Constitution?

For the reasons that follow, we conclude that the answer to the question is "yes" to the extent that OCGA § 45-5-3.2 authorizes a district attorney appointed by the Governor to serve beyond the remainder of the unexpired four-year term of the prior district attorney without an election as required by Article VI, Section VIII, Paragraph I (a) of the Georgia Constitution of 1983 ("Paragraph I (a)").

1. The facts are not in dispute. On March 6, 2020, Deborah Gonzalez attempted to qualify for the November 3, 2020 general

election for the office of district attorney for the Western Judicial Circuit after Ken Mauldin resigned from the office effective February 29. The Georgia Secretary of State determined that Gonzalez could not qualify for the November 2020 election for district attorney because, under OCGA § 45-5-3.2 (a), there would not be an election for that position until November 2022 — the state-wide general election immediately prior to the expiration of the Governor's future appointee's term. See OCGA § 45-5-3.2 (a) (Where the Governor fills a vacancy in the office of district attorney, the appointee "shall serve until January 1 of the year following the next state-wide general election which is more than six months after the date of the appointment of such individual, even if such period of time extends beyond the unexpired term of the prior district attorney."). Though the vacancy began more than six months before the scheduled November 2020 election, the Governor did not make

2

an appointment in time to maintain that scheduled election pursuant to the provisions of the statute.[1]

On May 18, 2020, Gonzalez and four other registered voters[2] sued the Governor and the Secretary of State in the United States District Court for the Northern District of Georgia. Gonzalez alleged that OCGA § 45-5-3.2 (a) violates Paragraph I (a). A week later, Gonzalez filed a motion for preliminary injunction, asking the district court to require the Governor and the Secretary of State to move forward with the November 2020 election for the Western Judicial Circuit district attorney. The district court granted the request, finding that Gonzalez likely would succeed on her federal due process claim because OCGA § 45-5-3.2 (a) conflicts with Paragraph I (a) and is therefore unconstitutional under Georgia law. See *Duncan v. Poythress*, 657 F2d 691, 704 (5th Cir. 1981) ("It is

---

[1] According to Gonzalez's brief, the Governor still has not made an appointment to fill the vacancy.

[2] The other registered voters are April Boyer Brown, Adam Shirley, Andrea Wellnitz, and Linda Lloyd. For ease of reference, Gonzalez and the other registered voters will be referred to collectively as "Gonzalez."

3

fundamentally unfair and constitutionally impermissible for public officials to disenfranchise voters in violation of state law so that they may fill the seats of government through the power of appointment. . . . [S]uch action violates the due process guarantees of the fourteenth amendment [of the United States Constitution].”). In July, the Governor and the Secretary of State appealed to the Eleventh Circuit, which certified the above-referenced question to this Court.

2. In evaluating whether OCGA § 45-5-3.2 (a) violates the Georgia Constitution,

> we recognize at the outset that all presumptions are in favor of the constitutionality of an Act of the legislature and that before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this Court must be clearly satisfied of its unconstitutionality. Moreover . . . statutes are presumed to be constitutional until the contrary appears.

(Citation and punctuation omitted.) *JIG Real Estate v. Countrywide Home Loans*, 289 Ga. 488, 490 (2) (712 SE2d 820) (2011).

With these principles in mind, our analysis begins with the text of Paragraph I (a), which states:

> There shall be a district attorney for each judicial circuit, who shall be elected circuit-wide for a term of four years. The successors of present and subsequent incumbents shall be elected by the electors of their respective circuits at the general election held immediately preceding the expiration of their respective terms. District attorneys shall serve until their successors are duly elected and qualified. Vacancies shall be filled by appointment of the Governor.

Notably, this text closely resembles constitutional language that set the term of office for elected superior court judges under the 1877 Constitution (as amended in 1898), which this Court interpreted in *Hooper v. Almand*, 196 Ga. 52, 57-58 (1) (25 SE2d 778) (1943). In *Hooper*, an incumbent judge died shortly before the end of his four-year term, and this Court determined that a judge appointed to fill the vacancy could not serve for longer than the unexpired term of the deceased judge without an election for a successor taking place. See id. at 59-61 (1). At the time that *Hooper* was decided, Article VI, Section III, Paragraph I of the 1877 Constitution provided for at least one superior court judge in each circuit "whose term of office

*shall be four years*, and until his successor is qualified."

(Punctuation omitted; emphasis supplied.) Id. at 57 (1). Paragraph

II of Section III stated in pertinent part:

> The successors to the present and subsequent incumbents *shall be elected* by the electors entitled to vote for members of the General Assembly of the whole State, *at the general election* held for such members, *next preceding the expiration of their respective terms. . . .*

(Emphasis supplied.) Id.

The same pertinent constitutional language also existed at

that time with respect to the selection of solicitors-general, whose

duties later became those of district attorneys. See *Copland v.*

*Wohlwender*, 197 Ga. 782, 784 (2) (30 SE2d 462) (1944) (interpreting

Article VI, Section XI, Paragraph I of the Georgia Constitution of

1877, which  stated in relevant part, "There shall be a solicitor-

general for each  judicial circuit, whose official term (except to fill a

vacancy) shall be four years. The successors of present and

subsequent incumbents shall be elected by the electors of the whole

State . . . at the general election held next preceding the expiration

of their respective terms.").

This Court interpreted the constitutional text at issue in

*Hooper* as follows:

> The words "next preceding the expiration of their respective terms" are obliged to refer to the four years for which the judges are elected, and not to an election next preceding the expiration of the four years plus an indefinite period which would run until their successors were qualified. The terms referred to here mean the four-year terms. To give the phrase any other rendition would be to hold that the constitution has fixed no definite time for the election of judges for full terms.

*Hooper*, supra, 196 Ga. at 57-58 (1). We also held that "[t]he words 'until his successor is qualified[ ]' found in the constitution . . . mean a successor elected by the people." Id. at 59 (1).

Similarly, this Court concluded in *Copland* that

> [t]he general policy of the law of this State is that the office of solicitor-general is an elective office; an appointment made by the executive shall be for such period of time only as is necessary to fill the office until the people can legally elect a solicitor-general. . . . We think that the language, "next preceding the expiration of their respective terms," was intended to designate the election at which solicitors-general should be elected for the full term of four years, and was not intended to designate the general election at which a successor should be elected in case of a vacancy.

197 Ga. at 786 (2) and 789 (5).

Thus, both *Hooper* and *Copland* determined that when this language is used in our Constitution, the timing of the election for a successor to an office is tied to the specific term for the office as measured by the Constitution. And, although the constitutional language analyzed in *Hooper* setting the terms for *judges* appointed to elective offices was materially changed in the 1983 Constitution, see *Barrow v. Raffensperger*, 308 Ga. 660, 672-673 (3) (c) (842 SE2d 884) (2020) (discussing Ga. Const. of 1983, Art. VI, Sec. VII, Par. IV), the constitutional language applicable to the terms of district attorneys under the 1983 Constitution is consistent with the language of prior versions of the Georgia Constitution that set fixed terms of office for elected judges and solicitors-general. Thus, *Hooper* and *Copland* are controlling in this case. See *Elliott v. State*, 305 Ga. 179, 184-187 (II) (B) (824 SE2d 265) (2019) (constitutional language that has received consistent and definitive construction and is then readopted into new Constitution is presumed to carry same meaning as that prior construction).

As was the case for elected superior court judges and solicitors-general under the materially same constitutional language at issue in *Hooper* and *Copland*, Article VI, Section VIII, Paragraph I (a) of our 1983 Constitution relating to district attorneys first fixes a four-year term for the office of district attorney in each judicial circuit. The second sentence of Paragraph I (a) then ensures that the successors of any presently serving and subsequent incumbent district attorneys (whether the incumbent was elected or appointed) "*shall be elected* by the electors of their respective circuits *at the general election held immediately preceding the expiration of their respective terms*." (Emphasis supplied.) Id. And the third sentence confirms that all district attorneys (again, whether elected or appointed) serve only "until their successors are *duly elected* and qualified" in the election held pursuant to the second sentence. (Emphasis supplied.) Id. A "successor" cannot be a district attorney who was merely appointed. Thus, the first three sentences of Paragraph I (a) create fixed four-year terms of office held by district attorneys with a quadrennial election that is required to take place

9

for the successors to those district attorneys at the end of each four-year term. See *Hooper*, supra, 196 Ga. at 57-58 (1) (Where the Georgia Constitution of 1877 established that successors to superior court judges would be chosen at the election "next preceding the expiration of their respective [four-year] terms," the constitutional language referred to "the four years for which the judges are elected."); *Copland*, supra, 197 Ga. at 789 (5). See also *Mitchell v. Pittman*, 184 Ga. 877, 886 (194 SE 369) (1937) (Georgia Constitution of 1877 fixed four-year terms for elected judges until a successor was chosen according to "the regular method . . . [of] election by the people" (citation and punctuation omitted)).

The final sentence of Paragraph I (a) says simply, "Vacancies shall be filled by appointment of the Governor." It does not say that appointments to fill vacancies do anything to change the existing, fixed, four-year term of office held by the district attorney who vacated the office before the end of that term. We therefore do not construe this language to change the fixed four-year term for district attorneys as established in the other three sentences of Paragraph I

(a). See *Hooper*, supra, 196 Ga. at 63 (1) ("Since, under the plain and unambiguous provision of paragraph 2 of section 3 of article 6 of the [1877] constitution, the successors to the present incumbents (referring to judges of the superior courts) shall be elected by the people at the general election next preceding the expiration of their terms, the immediately subsequent paragraph which deals with filling vacancies should not be so construed as to nullify the provision of paragraph 2, unless the entire language of the latter paragraph, together with the context, so requires it."). Indeed, under Paragraph I (a), an appointee to a vacant district attorney office becomes the present "incumbent" for that office who is then replaced by a "successor" who is "duly elected." See *Hooper*, supra, 196 Ga. at 63 (1). See also *Lee v. Peach County Bd. of Commrs.*, 269 Ga. 380, 381 (497 SE2d 562) (1998) (As used in the Georgia Constitution of 1983, the term "incumbent is defined . . . as one 'who is in present possession of an office and it is not limited, qualified or restricted by the method by which one attained office.'" (punctuation omitted)).

Accordingly, when the Governor's appointee fills a vacancy in an office of district attorney, he or she steps only into the remainder of the unexpired fixed four-year term for the office. Because the four-year term runs with the office, and not the individual in the office, the appointee would not begin a new term by being appointed, but would serve out the remainder of the existing term as the new "incumbent" until his or her successor (who could be the incumbent) is *elected* at the general election immediately preceding the expiration of that existing term. See *Shackelford v. West*, 138 Ga. 159, 162 (74 SE 1079) (1912) ("There is a patent difference between a vacancy in an office and the expiration of the term of the incumbent, whose tenure is for a definite term and until his successor shall qualify."). See also *Copland*, supra, 197 Ga. at 789 (5) (With respect to four-year terms for elected solicitors-general under the 1877 Constitution, the phrase "'next preceding the expiration of their respective terms[ ]' was intended to designate the election at which solicitors-general should be elected for the full

12

term of four years" after a vacancy appointment during the existing four-year term.).

Although there is no provision in Paragraph I (a) that allows for exceptions to the fixed four-year terms for district attorneys or the requirement for successor elections to be held on a quadrennial basis, OCGA § 45-5-3.2 (a) states:

> In those instances where the Governor fills a vacancy in the office of district attorney pursuant to Article VI, Section VIII, Paragraph I (a) of the Constitution, the vacancy shall be filled by the Governor appointing a qualified individual to the office of district attorney who shall serve until January 1 of the year following the next state-wide general election which is more than six months after the date of the appointment of such individual, *even if such period of time extends beyond the unexpired term of the prior district attorney.*

(Emphasis supplied.)[3] By its plain terms, OCGA § 45-5-3.2 (a) allows a district attorney who is appointed by the Governor within six

---

[3] OCGA § 45-5-3.2 states in its remaining subsections:

(b) A special election shall be held on the same date as the state-wide November general election which is first held following the date of the vacancy which is more than six months after the appointment of an individual to fill the vacancy and shall be held in conjunction with such general election.

(c) It shall be the duty of the Secretary of State to call and conduct the special election required by subsection (b) of this Code section in accordance with the applicable provisions of Chapter 2

months of a general election to remain in office "beyond the unexpired term of the prior district attorney." This conflicts directly with the mandate of Paragraph I (a), because the appointee's tenure in office would circumvent the constitutional requirement that the successor district attorney be chosen in the general election preceding the expiration of the fixed four-year term that the appointee incumbent fills. The General Assembly does not have the authority to extend the terms of appointed district attorneys in this way. See *Morris v. Glover*, 121 Ga. 751, 754 (49 SE 789) (1905) ("[W]here an office is created or guarded by express constitutional provision, its scope [cannot] be enlarged or lessened by statute, nor can the office be filled in any manner other than that prescribed by the constitution."). OCGA § 45-5-3.2 (a) is therefore unconstitutional

---

of Title 21, the "Georgia Election Code." Any individual elected at such special election pursuant to subsection (b) of this Code section shall possess the qualifications to seek and hold such office as provided by law.

(d) The individual elected in the special election conducted pursuant to subsection (b) of this Code section shall begin a new four-year term of office on January 1 immediately following such special election.

to the extent that it allows appointed district attorneys to serve "beyond the unexpired term of the prior district attorney."[4]

Our recent decision in *Barrow*, supra, does not require a different result. The constitutional provision at issue there

---

[4] We do not address today the General Assembly's authority to regulate the length of service of an appointed district attorney *within* the fixed four-year term of his or her office. From 1984 until OCGA § 45-5-3.2 was enacted in 2018, former OCGA § 45-5-3 provided, in relevant part, that if a district attorney vacancy occurred at any time during the final 27 months of a term of office, "the Governor shall appoint a person to fill such vacancy for the remainder of the unexpired term of office[,]" but if the vacancy occurred earlier in the term, "the Governor shall appoint a person to fill such vacancy until such vacancy is filled for the unexpired term of office *at a special election . . .* [that] shall be held on the same date as the general election which is first held following the date of the vacancy[.]" (Emphasis supplied.).

Under OCGA § 45-5-3.2 (a) and (b), if a district attorney appointment is made more than six months before the expiration of a predecessor's term, a special election is held in conjunction with the "November general election which is first held following the date of the vacancy which is more than six months after the appointment of [the] individual to fill the vacancy." Subsection (d) of OCGA § 45-5-3.2 goes on to state that "[t]he individual elected in the special election . . . shall begin a new four-year term of office on January 1 immediately following such special election." Thus, where an appointment occurs more than six months before the expiration of the predecessor district attorney's four-year term, and where the special election for a successor would coincide with the general election that is constitutionally required to take place immediately preceding the expiration of that predecessor's term, there would appear to be no conflict with Paragraph I (a).

But that is a different question than the General Assembly's authority to require, as former OCGA § 45-5-3 (a) (2) did, a special election to take place *before* the general election immediately preceding the expiration of the four-year term. We hold today only that, to the extent that OCGA § 45-5-3.2 allows an appointed district attorney to serve for a term that extends beyond the fixed four-year term of his or her predecessor, the statute is unconstitutional.

specifically directs that *judges* who are appointed to elective office "serve until a successor is duly selected and qualified and until January 1 of the year following the next general election *which is more than six months after such person's appointment*." (Emphasis supplied.) Ga. Const. of 1983, Art. VI, Sec. VII, Par. IV. Based on this specific constitutional language relating to the period of service for appointed judges, which was different from that in prior Constitutions (like the one *Hooper* had construed), we concluded that

> a *judge* appointed to an elective office does not inherit and serve out the remainder of his or her predecessor's term of office; that unexpired term . . . is eliminated when the incumbent judge vacates the office. . . . Instead, an appointed judge has an entirely new and shortened initial term of office, . . . the length of which depends on the date the judge was appointed, the date he or she takes office, and the date of the next nonpartisan general election.

(Punctuation omitted; emphasis supplied.) *Barrow*, supra, 308 Ga. at 671 (3) (b). We went on to emphasize that we could not

> ignore the import of Paragraph IV's definition of the initial period of service for judges *appointed* to *elective* office, because it was a significant change from prior Georgia Constitutions, under which an appointed judge

16

simply served out all or part of the unexpired term of the prior incumbent. . . . When constitutional language is substantively changed, we must give that change effect. . . . That this change in our constitutional system of selecting Justices was significant is further demonstrated by the fact that the serve-out-the-existing-term way of determining the initial term of appointed officials remains applicable to most other appointed public officials in Georgia.

(Emphasis in original.) Id. at 672-673 (3) (c).

In this case, there is no language in the constitutional provision relating to the terms for district attorneys that would allow for appointed district attorneys to serve beyond the remainder of the unexpired terms of their predecessors, and we cannot rewrite the Constitution to insert such language. See *Barrow*, supra, 308 Ga. at 692 (Melton, C. J., concurring) (The people of Georgia "have the power to seek amendment to [the Georgia Constitution]. But it is not the job of judges to usurp that power by rewriting constitutional provisions ratified by the people, or by rewriting laws enacted by the people's democratically elected representatives."). Thus, *Barrow* is not controlling here.

17

Nor is the result in this case affected by the language of Article V, Section II, Paragraph VIII of the 1983 Constitution relating to the Governor's *general* appointment power to fill vacancies in public offices. That constitutional provision states:

> When any public office shall become vacant by death, resignation, or otherwise, the Governor shall promptly fill such vacancy unless otherwise provided by this Constitution or by law; and *persons so appointed shall serve for the unexpired term unless otherwise provided by this Constitution or by law.*

(Emphasis supplied.) This Article V provision establishes a default rule that the Governor's appointees to vacant offices serve out the remainder of the unexpired terms of their predecessors, but that default rule can be changed by other provisions of the Constitution or by the General Assembly. As explained above, the *specific* constitutional provision relating to the appointment of district attorneys to vacant offices does not allow for appointments that extend beyond the remainder of the unexpired four-year term of the appointed district attorney's predecessor, and the constitutional provision allowing for the appointment of judges for a time period

18

that may extend beyond the remainder of the unexpired terms of their predecessors does not apply to district attorneys. See Ga. Const. of 1983, Art. VI, Sec. VII, Par. IV and Art. VI, Sec. VIII, Par. I (a). The parties point to no other constitutional provision that would allow the Governor to appoint district attorneys to serve beyond the existing term of their predecessors without an election for a successor taking place. Thus, the only question that remains is whether appointees to district attorney's offices may serve beyond the unexpired terms of the prior district attorneys as "otherwise provided by" the law of OCGA § 45-5-3.2 (a).

The answer to that question is no, because the General Assembly does not have the authority to "otherwise provide by law" that which is prohibited by specific provisions of the Georgia Constitution. See *Morris*, supra, 121 Ga. at 754. See also *Pittman v. Ingram*, 184 Ga. 255, 256 (190 SE 794) (1937) (The "provisions of the constitution . . . rank above all legislative or executive powers in relation to the subject to which they refer."). Indeed, as we explained in *Barrow*, where specific provisions in the Constitution establish

19

the parameters of service and succession for a government office, we apply those specific provisions rather than rely on the provisions relating to the Governor's general appointment power. See 308 Ga. at 673 (3) (c) ("We have explained that the specific language of Paragraphs III and IV of the judicial selection section in Article VI prevails over more general provisions relating to the Governor's authority to fill vacancies in Article V."). And, in this instance, a statute granting an appointed district attorney a term that would exceed the fixed limit specifically set by Paragraph I (a) would impermissibly enlarge by statute the scope of "an office [that] is created or guarded by express constitutional provision." *Morris*, supra, 121 Ga. at 754. Because Paragraph I (a) fixes a four-year term for district attorneys that a vacancy appointee simply steps into until a successor can be duly elected in the general election before that term expires, OCGA § 45-5-3.2 (a) cannot operate to change the length of that fixed term. To the extent that OCGA § 45-5-3.2 provides otherwise, it is violative of the Georgia Constitution and may not be enforced.

*Certified question answered. All the Justices concur, except Warren, J., not participating.*

Decided October 8, 2020.

Certified question from the United States Court of Appeals for the Eleventh Circuit.

*Christopher M. Carr, Attorney General, Russell D. Willard, Senior Assistant Attorney General, Elizabeth T. Young, Miles C. Skedsvold, Bryan K. Webb, Assistant Attorneys General, Andrew A. Pinson, Solicitor-General*, for appellants.

*Bruce P. Brown*, for appellees.

21