BOWEN *v.* LEWIS.

No. 15579.   OCTOBER 11, 1946.

*Wheeler, Robinson & Thurmond,* and *Weir S. Gaillard,* for plaintiff in error.

*C. H. Edwards* and *A. H. Henderson,* contra.

HEAD, Justice. (After stating the foregoing facts.) ■ The plaintiff in error attacked that part of the act creating the County Board of Commissioners of Roads and Revenues for White County (Ga. L. 1933, p. 762, sec. 11, par. 3), vesting in them jurisdiction in the opening of private ways and removing obstructions therefrom, as being unconstitutional, null, and void, in that there is a general law (Code, § 83-119) under which the ordinaries of this State have jurisdiction over the removal of obstructions from private ways, and that the act conferring such jurisdiction on the Board of Commissioners of White County is a special law, in violation of art. 1,

sec. 4, par. 1 of the Constitutions of 1877 and 1945 (Code, Ann. Supp., § 2-401). If the contentions of the plaintiff in error are sound, the judgment of the Board of Commissioners of Roads and Revenues of White County ordering her to remove obstructions from an alleged private way, and the judgment of the superior court affirming such order on certiorari, would be void and of no effect, since the commissioners would be without authority to render such judgment in the first instance.

The Code, § 83-119, is a general law. There is no general law in this State regulating the creation of county commissioners and fixing their jurisdiction, powers, and duties, but all acts creating county commissioners for the various counties of this State are special laws. The Constitution of 1945, art. 1, sec. 4, par. 1 (Code, Ann. Supp., § 2-401), provides: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The existing general law (§ 83-119) was enacted in 1872, many years prior to the act creating the Board of County Commissioners for White County.

Without more, the plaintiff's contention would appear to be well taken. However, the Constitution of 1945, art. 6, sec. 17, par. 1 (Code, Ann. Supp., § 2-5201), provides: "The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them, and to define their duties." (See art. 6, sec. 19, par. 1 of the Constitution of 1877.) The Constitution of 1945, art. 11, sec. 1, par. 6 (Code, Ann. Supp., § 2-7806), provides in part: "Whatever tribunal, or officers, may be created by the General Assembly for the transaction of county matters, shall be uniform throughout the State, and of the same name, jurisdiction, and remedies, except that the General Assembly may provide for commissioners of roads and revenues in any county." (See art. 11, sec. 3, par. 1, Constitution of 1877.) The provisions of the Constitution above quoted should, we think, be construed together, and so construed, there is no limitation or restriction upon the General Assembly in the creation of such commissioners by special act.

In *Rhodes* v. *Jernigan*, 155 *Ga.* 528 (117 S. E. 432), it was held: "Under the following decisions of the Supreme Court the General Assembly has the power to pass separate and distinct laws

creating county commissioners of roads and revenues for every county in Georgia; *and the provisions of general laws enacted by the legislature do not apply to such officers, unless made so by the special laws creating them.* [Italics ours.] On this issue, see the cases of *Pulaski County* v. *Thompson,* 83 *Ga.* 270 (9 S. E. 265), *Sayer* v. *Brown,* 119 *Ga.* 539 (46 ·S. E. 649), and *Smith* v. *Duggan,* 153 *Ga.* 463 (112 S. E. 458)." See also *Bradford* v. *Hammond,* 179 *Ga.* 46 (175 S. E. 18); *Robitzsch* v. *State,* 189 *Ga.* 638 (7 S. E. 2d, 387); *Moore* v. *Whaley,* 189 *Ga.* 647 (7 S. E. 2d, 394). The cases above cited were based on the Constitution of 1877. As heretofore shown, the provisions of the Constitutions of 1877 and 1945 on the question here involved are substantially the same, and the decisions cited are, therefore, authority for the rulings here made.

The Code, § 23-701—providing, "The ordinary, when sitting for county purposes, has original and exclusive jurisdiction over the following subject-matters, to wit: . . (3) In establishing, altering, or abolishing all roads, bridges, and ferries, in conformity to law"—is not controlling here. The ordinary sits for county purposes only in those counties where jurisdiction over county matters and county affairs has not been granted by legislative act to a county commissioner or board of county commissioners.

Counsel for the plaintiff in error, in support of his contention that the act placing jurisdiction over the removal of obstructions from private ways in the County Commissioners of White County is unconstitutional, cites *Griffin* v. *Sanborn,* 127 *Ga.* 17 (56 S. E. 71), wherein the court was dealing with an act of the General Assembly conferring upon the County Board of Commissioners of Decatur County "all the powers and duties of the ordinary of Decatur County, so far as the same relate to roads, bridges, ferries." By examination of the record in *Griffin* v. *Sanborn,* supra, we find that the sole question before the court was whether or not the word "roads" would include "private ways." Nowhere in the record was any constitutional ruling invoked. The language in headnote 3 is obiter. Such language is in conflict with older and later full-bench decisions of this court, and can not be followed here.

The provision of the act of. the General Assembly creating a Board of County Commissioners for White County, which confers upon them jurisdiction over the removal of obstructions from pri-

vate ways (Ga. L. 1933, p. 762, sec. 11, par. 3), is not unconstitutional as being in violation of art. 1, sec. 4, par. 1 of the Constitution (Code, Ann. Supp., § 2-401).

■ The testimony of the plaintiff, Ralph Lewis, and that of his father and other witnesses offered by him, failed to establish at least two essential averments of his petition. Charlie Lewis, the father of the plaintiff, stated that the only time he had any occasion to use the alleged prescriptive way had been within the past five years; and Ralph Lewis testified that he had only known of the alleged prescriptive way for five years. Neither the plaintiff nor his father claimed to have used the way for as much as seven years. The plaintiff testified that the only thing he ever did to the way was to cut some limbs from across it, and his father testified: "It ain't been over two years, I filled up all the holes that needed filling up. I don't think there was any that needed filling up." There was testimony by other witnesses for the plaintiff tending to show that the alleged prescriptive way was over the lands of H. H. Bowen during his lifetime; that Bowen, about the year 1885 or prior thereto, used such way over his lands; and there is testimony that the way has been used on occasions by persons in the community since 1885. There is no testimony that anyone ever did any work upon the alleged prescriptive way; nor is there any testimony showing a dedication of such way by H. H. Bowen to public use, and acceptance by the public. At the time of the hearing before the commissioners, the way had been completely obstructed by trees and brush for some time. The evidence is in conflict as to how long the obstructions had remained therein, but the plaintiff testified that he never did completely remove the obstructions after they first appeared in such way.

"To entitle one to a prescriptive right of way over the land of another, it must appear that the prescriber has been in the uninterrupted use of a permanent road over the land, not exceeding fifteen feet in width, and that he has kept it open and in repair for seven years or more." *Elliott* v. *Adams,* 173 *Ga.* 312 (4) (160 S. E. 336). The above ruling has been stated by this court many times. Almost the identical language was used in *Short* v. *Walton,* 61 *Ga.* 28. See also *Puryear* v. *Clements,* 53 *Ga.* 232; *Childers* v. *Holloway,* 69 *Ga.* 758; *Woolbright* v. *Cureton,* 76 *Ga.* 107; *Collier* v. *Farr,* 81 *Ga.* 749 (7 S. E. 860); *Clark* v. *Haymans,* 110 *Ga.*

326 (35 S. E. 323) ; *Buchanan* v. *Parks,* 111 *Ga.* 873 (36 S. E. 947) ; *Rogers* v. *Wilson,* 171 *Ga.* 803 (156 S. E. 817) ; *Hall* v. *Browning,* 195 *Ga.* 424 (24 S. E. 2d, 392).

This case falls squarely within the statement contained in *Aaron* v. *Gunnels,* 68 *Ga.* 528, 530, as follows: "So far from the evidence showing that these parties ever worked this or kept it in repair, it shows that it has never been worked by anybody, and that nothing has ever been done to it except the pulling out of the way any bush or other thing which, by chance, happened to fall into it by passers thereon." The court held that the removal of obstructions was not equivalent to work upon the private way. The evidence of Charlie Lewis, father of the plaintiff, that it had not been two years since he filled up the holes that needed filling up, but he did not think there were any that needed filling up, properly construed, can not be shown as repairs to the private way. But if so construed, it is the only evidence of any work on such way by any person, other than that of his son, that he removed certain brush.

The inference appears from the evidence that the way claimed was used by H. H. Bowen over his own lands during his lifetime, and that use by others originated by permission. The rule as to a prescriptive right being acquired when the use originated by permission of the owner was stated by this court in *First Christian Church* v. *Realty Investment Co.,* 180 *Ga.* 35 (178 S. E. 303), as follows: "When the use of a private way originates by permission of the owner, prescription does not begin to run until the user notifies the owner, by repairs or otherwise, that he has changed his position from that of a mere licensee to that of a prescriber." Since there is no evidence of notice, by work on such way or otherwise, a prescriptive way is not shown. Particularly is this true when the evidence completely fails to show seven-years' uninterrupted use of such way for any period of time during which the way is alleged to have existed.

Counsel for the defendant in error insist in their briefs and in their argument before this court that—the way being in existence at the time of the division by H. H. Bowen of his lands to his two daughters, Jane McGee and the plaintiff in error—Jane. McGee and those holding under her, including the defendant in error, acquired title to the way as an appurtenance passing with the land. This contention is not sound. At the time Bowen conveyed title

to his daughters, the alleged prescriptive way was on land owned by Bowen. He could not have had an easement in such way because he owned the title in fee, and his use of such way was a right of use that he had as owner of the land. It was a way over his own land used by him at his own convenience. Under the evidence here, it never existed apart from the land as an easement appurtenant thereto. Had Bowen in his conveyance to his daughter, Neela Bowen, reserved a way over lands conveyed to her for the use of his daughter, Jane McGee, an entirely different case would be presented. No such reservation was made, or attempted, and therefore it follows that Jane McGee and her successors in title did not acquire by deed from H. H. Bowen a way over the lands of Neela Bowen. In this connection see *Nugent* v. *Watkins,* 124 *Ga.* 150 (52 S. E. 158).

*Judgment reversed. All the Justices concur.*