SMITH et al., Commissioners, v. McMICHAEL et al.

JENKINS, Chief Justice. 1. Any taxpayer of a county has the right to apply to a court of equity to prevent the county commissioners from making contracts which they have no authority to make. *Mitchell* v. *Lasseter,* 114 *Ga.* 275, 281 (40 S. E. 287); *Dancer* v. *Shingler,* 147 *Ga.* 82 (2) (92 S. E. 935). See also *Smith* v. *Magourich,* 44 *Ga.* 163; *Keen* v. *Waycross,* 101 *Ga.* 588 (29 S. E. 42); *Wells* v. *Ragsdale,* 102 *Ga.* 53 (7) (29 S. E. 165); *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 804 (36 S. E. 247).

(a) In the instant case the authority of the county commissioners to enter into the contracts complained of is derived from the act of the General Assembly (Ga. L. 1946, p. 239 et seq.) which is sought to be declared invalid. Should such contracts be invalid for want of authority in the

commissioners to make the same, it would entail upon the county expense and loss in resisting the efforts of those who might claim under them. Accordingly, under the foregoing ruling, citizens and taxpayers of the county have such an interest in the validity of the act as to authorize the instant action attacking its validity on constitutional grounds.

2. Art. III, sec. VII, par. XV, of the new Constitution of 1945 provides as follows: "No local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the newspaper in which the sheriff's advertisements for the locality affected are published, once a week for three weeks during a period of sixty days immediately preceding its introduction into the General Assembly. No local or special bill shall become law unless there is attached to and made a part of said bill a copy of said notice certified by the publisher, or accompanied by an affidavit of the author, to the effect that said notice has been published as provided by law."

(a) The old Constitution of 1877 contained a provision in general terms requiring publication as to notice (art. III, sec. VII, par. XVI). Code, § 2-1816. The specific requirement was fixed by statute, which required publication and posting of the notice on the courthouse door. Under the old rule it was only necessary to exhibit to the General Assembly a copy of the newspaper in which the notice was published, together with a certificate from the ordinary or mayor of the town or city showing that such notice had been posted. Therefore, under the law as it existed under the old Constitution, it was a settled rule that a properly enrolled act of the General Assembly was conclusively presumed to have been enacted in accordance with all constitutional requirements, and it was not permissible to show to the contrary. However, unless for some reason the old and not the new laws as to publication and proof of notice should apply, the conclusive presumption just stated cannot be given application, since in the new law the proof of notice speaks for itself, with the result that under the new law the record of the bill as enrolled provides its own proof as to the prescribed notice, and there is no room for any presumption or other form of proof.

3. Art. III, sec. IV, par. III of the new Constitution of 1945 (Code, Ann. Supp., § 2-1603) provides in part as follows: "All business pending in the Senate or House at the adjournment of any regular session may be considered at any later regular session of the same General Assembly as if there had been no adjournment." This provision of the Constitution does not appear to have any bearing upon the present case since the bill here involved was introduced at the session of the General Assembly of 1945 and was passed at the *same* session carried over by joint resolution to 1946.

It is, however, the contention of the plaintiff in error that the above-quoted provision has the effect of preserving the status of all local bills pending in the General Assembly at the time of the adoption of the new Constitution; and that, since the local bill here under attack was pending at such time, the form of notice and the method of proving that such notice had been published would be controlled by the law as it existed at the time the bill was introduced, rather than by the

method provided for in the Constitution of 1945, and that therefore, under the rules of law respecting proof of notice under the old law, it must be conclusively presumed that the form of notice required by the old law had actually been given.

Both the old and the new methods providing for giving notice and showing compliance therewith are merely procedural. It is not contended that there is any inhibition in the Federal Constitution which would prevent the sovereign people of this State from changing, either by constitutional provision or by statute, procedural matters as to the method of giving notice or proving notice, so as to have application to legislation legally pending at the time of the change. It is not contended that any property rights were thereby affected or any personal privileges abridged; and since the bill here under consideration was actually passed *after* the adoption of the new Constitution, it is only necessary to see whether the new provision did in fact provide that the new procedure should apply as to pending bills, and what it is that the new procedure requires. It seems plain to us that, when the new Constitution provides that no local or special bill shall become law unless the new stated provision is complied with, it means just that, and it devolves upon us only to determine what this new requirement means.

4. It is conceded by counsel for the plaintiff in error that the enrollment of the bill here under attack did not have incorporated therein a copy of the advertisement with either a certificate of the publisher, or an affidavit of the author showing publication, as provided by law. An enrolled bill as prepared in the office of the clerk is simply an exact copy of what remains of the original bill as introduced by its author after such alterations and amendments as the legislature may adopt. It is the final form and substance, and it alone becomes law when duly signed by the presiding officers of the General Assembly and approved by the Governor. Any portion of what was originally introduced that is eliminated by the legislature before final approval of the enrolled bill is no part of the law. If the notice and proof thereof required by the Constitution to be made a part of the bill is for any cause eliminated by the legislature before final approval of the enrolled bill, it is no part of the law. It is further contended, however, that even under the new Constitution it is not required that evidence of compliance with the law as to publication of notice be incorporated within the enrollment of the bill, but instead it is only the original bill which must show such evidence of compliance; and that, since the enrollment is properly signed by the President of the Senate, the Speaker of the House, and was subsequently signed by the Governor, whereupon it became an act, it is contended that it must therefore be *conclusively presumed* that the requirements of the new law as to notice had been complied with, and that evidence of such compliance was in fact attached to or accompanied the original bill.

(a) With respect to local bills, the Constitution provides that no local bill shall be passed until the prescribed advertisement with respect thereto has been had. It further provides that "No local or special bill shall become law unless there is attached to and made a part of said bill a copy of said notice certified by the publisher, or accompanied by

an affidavit of the author, to the effect that said notice has been published as provided by law." This simply means that the required notice which must be attached to the bill becomes a part thereof either when copy of publication is certified by the publisher or proven by affidavit of the author. In either case the notice as thus proven becomes an integral part of the bill itself and as such must be embodied within the enrollment of such bill. That such was clearly the intent of the commission proposing the new Constitution, is shown by the published minutes of their proceedings. Vol. 1, p. 354 of the Records of the Constitutional Commission, 1943-44, shows the following colloquy after the proposal had been read: "Chairman Arnall. Any discussion of it? If not, Mr. Harris moves the adoption of Paragraph XV. Judge Candler. Wouldn't it be better to require the author of the bill to make the affidavit, and would it not be better to provide the affidavit shall become a part of the journal? Chairman Arnall. If it becomes a part of the bill, as this provides, then it would be published in the acts as a part of the law. Judge Candler. The affidavit would? Chairman Arnall. Yes, it would be a component part of the law. It would be a part of it and would have to be published. Isn't that your understanding? Mr. Harris. Yes, sir. Chairman Arnall. Any further discussion? The question is on the adoption of Paragraph XV of Section VII of Article III of the Committee report, which will become Paragraph XV, Section VII, Article III of the proposed new Constitution. Mr. Harris moves its adoption. Judge Candler seconds the motion of the gentleman who is chairman of the Subcommittee. Is there any discussion? If not, the question is on the adoption of Paragraph XV, Section VII, Article III, as read. It will be ordered adopted in the absence of objection. Is there objection? The chair hears none, and it is so ordered adopted. Now paragraph XVI, paragraph XVII of the present Constitution." In *Epping* v. *Columbus,* 117 *Ga.* 263, 264 (4) (43 S. E. 803), this court said: "The proceedings and debates of a constitutional convention, while powerless to vary the terms of the constitution, are nevertheless valuable aids in determining the purpose and consequent meaning of a doubtful provision." The commission, while not strictly a constitutional convention, was the body which prepared and proposed the new Constitution for submission by the General Assembly to the people. We therefore think that their interpretation of the provision should be given due weight and consideration. Most especially does our interpretation seem necessarily sound and correct in view of that other fundamental rule of construction that courts must keep in mind the old law, the evil, and the remedy. It would be an anomaly to hold that part, but not all of the bill, shall be enrolled, especially since the enrollment after being duly signed becomes an official act of the General Assembly and stands now even as heretofore the final authority as to the *contents of the bill* as finally enacted. That such a construction is necessarily required can be readily demonstrated by reference to the unquestioned and universal rule of law to the effect that courts will not go behind an enrolled bill when it is properly authenticated for the purpose of determining either the terms of the act, or whether it has been regularly enacted. *Williams* v. *MacFeeley,* 186 *Ga.* 145, 152

(197 S. E. 225). Under the rule just stated, it would be legally impossible to show by resort to the original bill or by any other evidence that the proof of notice was or was not attached to the original bill when it became enacted into law, the enrollment of the bill as to its contents being the sole and only test. It is therefore apparent that, if it was not necessary that the enrollment of the bill show compliance upon its face, the courts might perhaps again be required to indulge in the legal presumption that all local or special bills were in fact accompanied by the required proof of notice. But such was the precise situation which was sought to be avoided by incorporating within the Constitution itself the inhibition against any bill becoming law unless the prescribed proof of advertisement appear on its face as a part thereof, and thus dispense with the necessity for any legal presumption. It will be seen, therefore, that the construction which we have placed upon this provision will not only give legal effect to the intent and purpose of the new Constitution, but that such a construction is also consistent with existing legal principles which recognize the conclusiveness and finality of an enrolled act of the General Assembly. Thus, under the above construction, when the enrollment of any local or special bill has incorporated therein the required proof of notice, and after it has been properly signed and filed with the Secretary of State, it will not only impute absolute verity as to its contents, but it will also conclusively show upon its face its validity with respect to the constitutional requirements as to proof of notice; whereas, if such enrollment fails to show the required proof of notice, it is upon its face invalid. It appears to be the manifest intention of the new provision of the Constitution that the bill as finally enrolled as the statute shall speak for itself, and that no presumptions and no sort of evidence shall be allowed to speak in lieu of what the enrolled act says for itself. This clear manifestation of intent can not be defeated by mere punctuations that might appear therein. This court in *Slaten* v. *Travelers Insurance Co., 197 Ga.* 1 (28 S. E. 2d, 280), held that, although a comma appearing in the statute there construed might allow a certain construction, yet the manifest intent of the legislature required a different construction, and it was said that, "in order to effectuate the legislative intent . . punctuation will be disregarded whenever necessary. Black on Interpretation of Laws, 186."

It constitutes no valid argument against our construction of the Constitution to suggest that it would be unfair to a member of the General Assembly, who has properly advertised his local bill and attached the verified or certified copy of the advertisement to the original bill, to declare the law unconstitutional because the enrolling clerk omitted to copy such proved advertisement in the enrolled bill. A decisive answer to such a suggestion is that such clerk is employed by the legislative body of which such author is a member, and is thus subject to the direction and control of that body. The author, being a member of the body, is entitled to be heard and to secure the direction of the legislature that any erroneous copy of his bill be corrected to make it speak the truth in its enrolled form before it is signed by the presiding officers and the Governor. It is both the unquestioned privilege and the

duty of the author of such local legislation to follow it through the process of enactment and make sure that in its final form it embodies the exact original as approved by the legislature.

5. Since the petition in the instant case contained prayers to enjoin the further transaction of business by the county commissioners under authority of the act of the General Assembly which was attacked as being unconstitutional, and since under the foregoing rulings the petition set forth a valid cause of action for such injunctive relief, it is immaterial how such action may have been designated. Accordingly, the trial court did not err in overruling general demurrers to the petition, or in declaring unconstitutional the act of the General Assembly complained of on the ground that it did not show the required proof of advertisement, and in enjoining the county commissioners as prayed.

*Judgment affirmed. All the Justices concur, except Jenkins, Chief Justice, who dissents, and Wyatt, J., who took no part in the consideration or decision of this case.*

JENKINS, Chief Justice, dissenting. In accordance with the wishes of the court, the foregoing opinion was prepared in conformance with the majority view. What is said in paragraph 4 (a) does not represent my own views. While the language of the Constitution quoted at the beginning of paragraph 4 (a) of the majority opinion cannot be said to be altogether free from ambiguity, I have been unable to reach the legal conclusion that the most reasonable interpretation of the new Constitution is that—if a member of the House or Senate follows the strict mandate of the Constitution, and publishes the notice as required and accompanies the bill with his sufficient affidavit that the prescribed notice has been published as provided by law—the act shall fail merely because the enrollment fails to embody such preliminary proof, although, as stated, the affidavit may have been actually made and accompanied the bill as the law requires. I say this because I recognize a vast and distinctive difference between a bill introduced by some member of the House or Senate and an authenticated act of the General Assembly. The bill is nothing more than a proposal made by some member of either branch of the General Assembly. The authenticated enrollment is what the legislature has enacted into law. The bill like the chrysalis shreds all of its language of a preliminary nature such as proof of notice being published and all amendatory verbiage, if any, when it takes upon itself the form of a finished statute, unless such preliminaries be specifically made by law a part of the bill itself. The bill is what the legislature had before it in its journey through the General Assembly, including all preliminary requirements; the enrollment is the law and nothing but the law. It shows that and only that which the legislature has enacted into a statute. It is true that, when the first of the two given methods of proof provided for by the terms of the Constitution is resorted to, that is, when the certificate of the publisher and not the affidavit of the author is relied on, the notice as certified by the publisher must be attached to the bill as a part thereof, and in such a case the enrollment must contain such notice and certificate as an integral part of the law itself. But, as indicated, the Constitution provides not one but two methods of proving newspaper

notice. In · the one case, that is when proved by the publisher, the proof need *not* be sworn to, but the notice must in that case be. *attached* to the bill as a *part thereof,* and the publisher ·need then only *certify* that the publication has been made as prescribed by law. In the other case, that is, when proved by the sworn affidavit of the author, it is not required that the proof be attached to the bill as a part thereof, but *it is* required that the bill be accompanied with an affidavit *sworn* to by the author that said notice has been published as provided by law. It could hardly be thought that the General Assembly in proposing the provision to the people would require the identical proof by the publisher and by the legislative author, except that the publisher is not required to swear to his proof, while the legislator is required to do so. What the constitutional provision in effect says, and what it therefore should be taken to mean, is that, if the author does not *accompany* his bill by his affidavit that said notice has been published as provided by law, but relies on proof by the publisher, the notice and unsworn certificate of the publisher must not only be attached to the bill but be made a part thereof. In other words, it can at the very least be said that there are two reasonable alternative interpretations for the method of proof of advertisement for local or special bills: one being that the notice be attached to and made a part of the bill together with a certificate of the publisher to the effect that said notice has been published as provided by law; the other and, as I see it, the most reasonable, being that the bill may be *accompanied* by an *affidavit* sworn to by the author to the effect that said notice has been published as provided by law. Either of these methods of proof will suffice, but in the one case the proof constitutes a part of the bill itself, while in the other case it does not, but merely accompanies it. In the one case the enrollment of the bill will show the proof, in the other case it will not. To test the natural meaning of this provision of the Constitution, let it be quoted for the purpose of being analyzed. The Constitution, after prescribing the character of publication required, uses this language: "No local or special bill shall become law unless there is attached to and made a part of said bill a copy of said notice certified by the publisher, or accompanied by an affidavit of the author, to the effect that said notice has been published as provided by law." It would seem that the reasonable and natural interpretation would be to let the "or" setting up the two alternative provisions relate back to the word "unless"; that is to say, no local bill shall become law *unless* one of two requirements is complied with—either that there is *attached* to and made a part of said bill a copy of said notice *certified* by the publisher to the effect that said notice has been published as provided by law, or *unless accompanied* by an affidavit *sworn* to by the author to the effect that said notice has been published as provided by law. Even in order to construe the provision to mean that the *notice* must be attached to the bill when proven by the affidavit of the author, it would seem that two things must first be done: first, there must be added a comma · between the words notice and certified; and second, the comma must be stricken after the word publisher. If both of these changes were made in the Constitution as written, then, but only then, the natural

meaning would require that the notice must be attached to the bill when proof is made by the affidavit of the author, otherwise not. But that such is not the reasonable and natural interpretation is shown by the fact that even then there would be nothing to require that the author must also attach his proof of notice as a part of the bill. It is therefore not just a matter of punctuation, for even should this court feel authorized to change the punctuation, both by striking out and putting in, that would still not suffice. By shifting from the word "attached" to the word "accompanied" as related to the affidavit of the author, the provision seems clearly to negative the idea that the sworn proof by the author should be *attached* to the bill as a part thereof, as is required when proof is made by the mere certificate of the author. What merely *accompanies* the bill cannot possibly be said to constitute a part thereof. The provision of the Constitution, by changing the word "attached" in one case to the word "accompanied" in the other case, made a sharp right-angle turn, and the difference in significance between the two words can hardly be ignored. The conclusion formulated in the dissent is that the enrolled act is not nullified merely because it does not contain something which the law does not contemplate that it should contain. On its face the enrollment sets forth a valid law. We are not here concerned under the record as presented as to what the publisher must include in his certificate or as to what the author must include in his affidavit as to proof having been made "as provided by law." Perhaps it might be thought that the author should set forth in his affidavit what notice was published, and that both he and the publisher should set forth in what manner publication was had. This, however, is not the question. The one question actually here involved is whether the affidavit of the author should be attached to the bill as a part thereof, despite the fact that the Constitution provides only that his affidavit shall *accompany* the bill, whereas, if proof by the publisher is relied on, his certificate must be attached to the bill as a part thereof. In the one case the proof should be enrolled as a part of the bill, in the other case not. Nor is any question presented as to whether the validity of the act could be attacked after enrollment by showing that the bill itself as filed with the Secretary of State, just as the enrollment is filed, fails to show that the bill was accompanied by the affidavit of the author. This is true because the record here involved is wholly silent as to whether such was or was not the fact, and there would at least be a prima facie presumption that it did unless proof to the contrary was shown. See, in this connection, *Dorsey* v. *Wright,* 150 *Ga.* 321 (103 S. E. 591). But, under the rules just stated, the mere fact that the *enrollment* does not contain something which, under at least one reasonable, and I believe the most reasonable, construction of the Constitution it is not required to contain, would not justify nullifying this law and a vast multitude of similar local laws, all presumably actually complying with the law but all coming within the same state of facts as to enrollment under the interpretation as given by the legislative enrollment authorities. This we should not do unless positively compelled to do so by plain and unambiguous language of the Constitution so requiring. This court in *Macon & Augusta Railroad*

v. *Little,* 45 *Ga.* 370, 380, had this to say: "The *argumentum ab incon-venienti* will be strained to its utmost limits to sustain acts of the legis-lature, to declare which void might produce very serious consequences to the State." In *Gormley* v. *Taylor,* 44 *Ga.* 76, 99, Chief Justice Loch-rane in writing a special concurrence to the majority opinion said in this language: "With all judges consequences must needs influence con-sideration. We should pause upon the enunciation of legal judgments whose effect would be to upset society and turn loose chaos over the land. . . I think consequences have something to do with invoking a more thorough consideration of all the questions arising under the facts of the case before announcing it to be the law." While it is entirely proper in construing ambiguities to give consideration to what the commission that prepared the new Constitution intended, it is like-wise just as proper to give due weight and consideration to the con-struction as made by the proper legislative or administrative authorities. See *Wellborn* v. *Estes,* 70 *Ga.* 390. There are other questions which, under the view here presented, need not be raised or decided. Among those are whether a bill which was carried forward to an adjourned meeting of the same session, as this one was, and which was introduced prior to the adoption of the new Constitution, would be governed by the old or new law as to the character of notice and the proof thereof.

No. 15893. OCTOBER 24, 1947. REHEARING DENIED NOVEMBER 14, 1947.

*Williams & Freeman,* for plaintiffs in error.
*W. E. Watkins* and *Benjamin B. Garland,* contra.