### 30613. SMITH v. ABERCROMBIE et al.

INGRAM, Justice.

We decide in this case the merit of the constitutional attacks made upon Ga. L. 1975, p. 2512, a special Act which provides an election procedure for the recall of commissioners of Douglas County.[1] The trial court upheld the Act against the contentions of appellant, the previously elected chairman of the Board of Commissioners, who was removed from office by the electorate at a recall election. A new election to fill this

———

[1] The Act provides that upon certification of the petitions of not less than 30 percent of the registered voters of Douglas County within a specified time period, the judge of the probate court shall issue a call for an election. The election is for the purpose of deciding whether or not to recall the specified commissioner. If a majority of the voters voting in the recall election vote in favor of a recall, the office in question is vacated.

vacancy has been scheduled in Douglas County. Thus, the critical issues relating to the constitutionality of the Act that are considered in this appeal will determine whether the forthcoming election should be held to fill the office which was declared vacant by the voters. If the Act is valid, it is of public importance the election be held to fill the vacancy created by the earlier recall election. However, if the Act is found invalid, all proceedings thereunder are nugatory.

## Notice of the Recall Legislation

Appellant's first contention is that the advertised "Notice of Intention" attached to the legislation failed to advise the citizens of Douglas County of the content of the local bill as required by Art. III, Sec. VII, Par. XV of the Constitution of the State of Georgia (Code Ann. § 2-1915). No issue is made of the fact that the notice was run in the local newspaper the required number of times. The sole contention is that the notice was insufficient to advise the citizenry of the three local bills which were introduced at the same time. The advertisement notice that appeared provided that there would be introduced at the regular 1975 session of the General Assembly of Georgia a bill to amend an Act creating the Board of Commissioners of Douglas County, approved February 15, 1952 (Ga. L. 1952, p. 2703), as amended; and for other purposes.

The purpose of the notice requirement of Code Ann. § 2-1915 is "to prevent local and special laws which affected only a particular locality . . . from becoming laws unless notice of intention to introduce such bills be given . . . preceding their introduction in the General Assembly . . . the object being to prevent duties and obligations being imposed on local governments without giving those in charge of such governments an opportunity to oppose their passage." *Fleming v. Daniell,* 221 Ga. 43, 45 (142 SE2d 804) (1965). See also *Brown v. Clower,* 225 Ga. 165 (166 SE2d 363) (1969).

As to proof the notice was given, this court has stated that the notice must be part of the enrolled bill, but that "when the enrollment of any local or special bill has incorporated therein the required proof of notice, and after it has been properly signed and filed with the

Secretary of State, it will not only impute absolute verity as to its contents, but it will also conclusively show upon its face its validity with respect to the constitutional requirements as to proof of notice; whereas, if such enrollment fails to show the required proof of notice, it is upon its face invalid." *Smith v. McMichael,* 203 Ga. 74, 78 (45 SE2d 431) (1947). This presumption of validity was used to uphold as sufficient the notice given in *Bleckley v. Vickers,* 225 Ga. 593 (170 SE2d 695) (1969). In that case the notice was part of the enrolled statute and determined to be conclusive of its validity. Similarly, in this case, the notice is enrolled as part of the bill and is conclusive proof the notice was given.

We consider next whether the notice that was given was sufficient to put the citizens on notice about the subject matter of the proposed enactment. See *Panlos v. Stephenson,* 213 Ga. 816 (102 SE2d 165) (1958). In *Walker Electrical Co. v. Walton,* 203 Ga. 246 (46 SE2d 184) (1948), the notice advised that the Act creating the Civil Court of Fulton County would be amended. A statute was then passed changing the court's jurisdiction. The notice was held sufficient to advise the citizens that any legislation affecting the civil court "within the range of legislative enactment" might be enacted. Thus specificity in the notice is not required by the Constitution. *Cain v. Lumpkin County,* 229 Ga. 274, 275 (190 SE2d 910) (1972). However, once specific matters are mentioned in the notice, matters foreign to those subjects may not constitutionally appear in the bill. See *DeKalb County v. Atlanta Gas Light Co.,* 228 Ga. 512, 514 (186 SE2d 732) (1972); *Stepp v. Lance,* 233 Ga. 358 (211 SE2d 311) (1974).

The general notice here involved alerted the citizens of Douglas County of the intention to amend the Act creating the Board of Commissioners and thus gave notice of the broad range of possible legislative enactment. Under the principles of decision in the above cases this notice of intention was sufficient to satisfy the constitutional requirement of Code Ann. § 2-1915.

Equal Protection and Related Issues

Several enumerations of error relate to appellant's argument that the legislature is prohibited by several sections of the Georgia Constitution and the Equal

Protection Clause of the Fourteenth Amendment to the Constitution of the United States from enacting a recall provision that affects only Douglas County Commissioners and not the commissioners of other counties. The trial court ruled that this Act does not violate Art. XI, Sec. I, Par VI of the Georgia Constitution (Code Ann. § 2-7806), requiring uniformity in county matters, or Art. I, Sec. IV, Par. I of the Constitution of the State of Georgia (Code Ann. § 2-401) which prohibits enactment of a special law where provision has been made by an existing general law.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from enacting laws which deny persons in the same class equal protection of the law. The legislature may define the classes as it chooses so long as the classification is not arbitrary and unreasonable. See *McCullers v. Williamson,* 221 Ga. 358, 365 (144 SE2d 911) (1965). There is nothing, however, in the Fourteenth Amendment that prohibits a state from creating different kinds of political subdivisions and providing a different process for selecting and removing officials in those subdivisions. See Missouri v. Lewis, 101 U. S. 22 (1879). The states have wide discretion in deciding whether a law should operate statewide or only in certain counties. See Griffin v. School Board of Prince Edward County, 377 U. S. 218, 231 (1963). Thus the General Assembly of Georgia may treat different counties differently by specifying the type of county government each shall have as long as it does not act arbitrarily under the Fourteenth Amendment. We do not believe the present Act is arbitrary or capricious since all the Douglas County Commissioners are subject to the recall procedure of the Act and there is nothing in the Fourteenth Amendment which prohibits this legislative scheme.

Appellant also asserts the present Act violates Art. XI, Sec. I, Par. VI (Code Ann. § 2-7806) of the Georgia Constitution which provides, "[w]hatever tribunal, or officers, may be created by the General Assembly for the transaction of county matters, shall be uniform throughout the State . . . except that the General Assembly may provide for Commissioners of Roads and

Revenues in any county . . . without respect to uniformity." In addition, appellant contends the Act violates Art. VI, Sec. XVII, Par. I (Code Ann. § 2-5201) which provides: "The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them, and to define their duties," and Art. I, Sec. IV, Par. I (Code Ann. § 2-401) which provides: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."

This court has construed Code Ann. § 2-401 regarding special laws, together with Code Ann. § 2-5201 and Code Ann. § 2-7806, to impose very little restriction on the General Assembly in creating and defining the duties of county commissioners by special Act. The law in Georgia under the Constitutions of both 1877 and 1945 has been that the "General Assembly has the power to pass separate and distinct laws creating county commissioners of roads and revenues for every county in Georgia; and the provisions of general laws enacted by the legislature do not apply to such officers, unless made so by the special laws creating them." *Bowen v. Lewis,* 201 Ga. 487, 489 (40 SE2d 80) (1946). See also *Hutchins v. Candler,* 209 Ga. 415 (73 SE2d 191) (1952); and *Rhodes v. Jernigan,* 155 Ga. 523 (117 SE 432) (1923). There is no requirement of uniformity with regard to the powers and duties of county commissioners. See *Robert v. Steed,* 207 Ga. 41 (3) (60 SE2d 134) (1950), and *Wilson v. Jones,* 218 Ga. 706, 710 (130 SE2d 227) (1963).

The Constitution gives the General Assembly the power to create and define the duties of boards of commissioners without regard to uniformity as "the rule which forbids the passage of special legislation where a general law has been passed upon the subject has no application whatsoever. . . [A]ny county in the state may have a board of commissioners upon an entirely different plan from any and all other like boards in the state." *Bradford v. Hammond,* 179 Ga. 40, 47 (175 SE 18) (1934).

Similarly, we find there has been no constitutional requirement of uniformity throughout the state in the method of removing county commissioners. For example,

in 1909, the General Assembly enacted legislation creating and defining the duties of the Wilkinson County Board of Commissioners. One section of that Act provided that the commissioners were to post itemized statements of county funds disbursed on the courthouse door. Upon failure to do so, the superior court judge could, on petition of 25 freeholders, remove the commissioners from office. This court held that the Constitution did not require uniformity as to the Acts creating county commissioners and that "the removal of county officers is part of the general scheme of providing for the creation of such boards and for the powers to be exercised by them. . . [I]t would naturally follow that uniformity would not be required in the matter of removals." *Smith v. Duggan,* 153 Ga. 463, 465 (112 SE 458) (1922). See, e.g., *Crawley v. State,* 150 Ga. 86 (102 SE 898) (1920). The same conclusion follows under the 1945 Constitution. See *Bowen v. Lewis,* supra, pp. 489, 490.

Appellant also contends the present Act (Ga. L. 1975, p. 2512) conflicts with Code Ann. § 89-105 which requires that officeholders remain in office until their successors are qualified. The Act provides for the office of Douglas County Commissioner to be vacated as a result of a vote in favor of recall in the recall election and that vacancies thus created will be filled in the same manner as other vacancies. As discussed in the preceding section of this opinion, the legislature has almost unlimited power to provide for the creation and removal of county commissioners. They may provide special laws for county commissioners without regard to uniformity. See, e.g., *Bradford v. Hammond,* supra, and *Bowen v. Lewis,* supra. It necessarily follows that the legislature may specify a special procedure to fill vacancies in these positions as long as that procedure violates no other constitutional provision. See, e.g., *Lance v. Stepp,* 232 Ga. 675 (208 SE2d 559) (1974). We hold that this portion of the local Act therefore does not violate Code Ann. § 2-401. Nothing held in *Kidd v. Nelson,* 213 Ga. 417 (99 SE2d 123) (1957) requires a different conclusion.

### Removal for Malpractice

Appellant also contends the present Act violates the provision of the Georgia Constitution which provides that

county officers "shall be removed upon conviction for malpractice in office." Art. XI, Sec. II, Par. I (Code Ann. § 2-7901). Appellees admit that appellant was not removed for malpractice under this section but contend that § 2-7901 does not apply to county commissioners as they are not county officers within the meaning of this section. See *Rhodes v. Jernigan,* 155 Ga. 523 (117 SE 432) (1923) relating to a portion of the predecessor provision to Code Ann. § 2-7901. See also *Wilson v. Harris,* 170 Ga. 800 (154 SE 388) (1930), and the apparently conflicting decision in *Sweat v. Barnhill,* 171 Ga. 294 (155 SE 18) (1930), and *Marshall v. Walker,* 183 Ga. 44 (187 SE 81) (1936) which held that if any part of *Sweat* conflicted with *Wilson v. Harris,* supra, it must yield to the latter decision. For examples of cases decided after *Marshall,* which reaffirm the holding in *Sweat* that a county commissioner is a county officer, see *Hulgan v. Thornton,* 205 Ga. 753, 757 (55 SE2d 115) (1949), and *Employees Retirement System v. Lewis,* 109 Ga. App. 476, 479 (136 SE2d 518) (1964).

Even if we assume that Code Ann. § 2-7901 is applicable to county commissioners, it does not follow that this constitutional requirement that county officers "shall be removed upon conviction for malpractice in office" is an exclusive removal section which prohibits the General Assembly from legislating other valid means for removal of county officers. The removal section of § 2-7901 is a mandatory rather than a limiting section. It merely specifies that malpractice in office requires automatic removal from office of the officeholder. It does not otherwise deal with removal and does not prohibit the General Assembly from enacting otherwise valid removal statutes. For cases upholding the removal provisions of other local Acts which were decided prior to the 1945 Constitution, see, e.g., *Robitzsch v. State,* 189 Ga. 637 (7 SE2d 387) (1940), and *Smith v. Duggan,* supra.

Abolition of the Office and Modification of the Term

Appellant also enumerates as error the finding of the trial court that the present Act does not violate that portion of the Georgia Constitution, Art. III, Sec. VII, Par. XV (Code Ann. § 2-1915) which provides, "No office to which a person has been elected shall be abolished, nor

the term of the office shortened or lengthened by local or special bill during the term for which such person was elected unless the same be approved by the people . . . in a referendum. . ."

This court has determined the legislature can deal with the subject of qualification and disqualification of county commissioners so long as it does not impinge on any other limitation of the State or Federal Constitutions. *Wilson v. Harris,* 170 Ga. 800, supra. Prior to the 1945 Constitution, the legislature had the power to abolish the office and to lengthen or shorten terms. See *Wilson,* supra. The present Constitution (Code Ann. § 2-1915) now provides that this power can only be exercised by the legislature with the people's approval by referendum. See also *Houlihan v. Saussy,* 206 Ga. 1, 4 (55 SE2d 557) (1949). Appellant asserts here that the enactment of the recall provision in this Act violates this provision of the Constitution.

Actually, the provisions of the present Act do not affect the term of the office of county commissioner. See, e.g., *Bleckley v. Vickers,* 225 Ga. 593, supra. It merely provides an election mechanism for removing a particular person from the office. The recall of an officeholder under this Act does not abolish or modify the term of the office. It merely creates a vacancy in the office. "To abolish an office means to abrogate, annihilate, destroy, extinguish, or put an end to it." *Webb v. Echols,* 211 Ga. 724, 726 (88 SE2d 625) (1955). Since we find that this recall procedure does not abolish, shorten or lengthen the term of office, the prohibition in § 2-1915 does not apply. We do not have to reach the question of whether this recall election constituted a referendum under § 2-1915 which would authorize the abolition or modification of the term of office.

In summary, we find the present Act does not by its terms remove anyone from office nor abolish, lengthen or shorten a term of office. Instead, it installs a recall provision for county commissioners in Douglas County. The term of office which they occupy remains the same and if they are recalled by the electorate and are not subsequently reelected by the voters, their successors merely complete the unexpired term of their offices.

Retroactive Laws

Finally, appellant disagrees with the finding of the trial court that the present Act does not violate Art. I, Sec. III, Par. II of the Georgia Constitution (Code Ann. § 2-302) which provides that, "No Bill of Attainder, ex post facto law, retroactive law, or law impairing the obligations of contracts . . . shall be passed."

"Laws prescribe only for the future. . . Retrospective statutes are forbidden by the first principles of justice . . . Furthermore, a repealing Act will not be given retroactive operation, so as to divest previously acquired rights, or to impair the obligation of a contract lawfully made by virtue of and pending the existence of the law repealed. [Cits.]" *Bank of Norman Park v. Colquitt County,* 169 Ga. 534, 536 (150 SE 841) (1929). See also *Federal Deposit Ins. Corp. v. Beasley,* 193 Ga. 727 (20 SE2d 23) (1942).

This prohibition against retroactive laws applies to vested rights. See *Bullard v. Holman,* 184 Ga. 788 (193 SE 586) (1937), and *Fortson v. Weeks,* 232 Ga. 472 (7) (208 SE2d 68) (1974). We, therefore, must examine the question of whether or not appellant has a vested right to the office of Chairman of the Board of Commissioners of Douglas County. An incumbent in a public office does not have a vested right in the office which entitles him to complain of legislation affecting the office upon the ground that it is retrospective where no other right under the Constitution is violated. *Copland v. Wohlwender,* 197 Ga. 782 (3) (30 SE2d 462) (1944). See also *City Council of Augusta v. Sweeney,* 44 Ga. 463 (9 AR 172) (1871), and the Georgia Constitution, Art. I, Sec. I, Par. I (Code Ann. § 2-101). See also *Houlihan v. Saussy,* 206 Ga. 1, supra, pp. 4, 5. Nor does he have a right to complain that the law was not in effect at the time he was elected absent some other constitutional right. See *Altman v. Taylor,* 178 Ga. 689 (173 SE 828) (1934), and *Bleckley v. Vickers,* supra.

Similarly, we must reject the assertion that appellant has any contract rights in the office. The legislature is limited only by specific provisions of the Federal and State Constitutions in dealing with public offices. See *Gray v. McLendon,* supra, pp. 250-252, and *Felton v. Huiet,* 178 Ga. 311 (4) (173 SE 660) (1933). "There

can be no question about the proposition that the legislative power of the state is absolute with respect to all offices that it creates, where no constitutional restriction is placed upon its power with reference to such offices. The incumbent of such an office does not hold the same by virtue of any sort of contract, express or implied, with the state or its lawmaking power, which gives him a vested right in the office. He accepts the office subject to the control of it by any legislative action in reference thereto which might thereafter be taken." *Collins v. Russell,* 107 Ga. 423, 426 (33 SE 44) (1899). We hold the legislature was not constitutionally prohibited from enacting the recall provisions of the present Act as contended by appellant in this enumeration of error.

In conclusion, we find no merit in the constitutional attacks made on this Act by the appellant in this case.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs in the judgment only, and Jordan, J., who dissents.*

ARGUED NOVEMBER 18, 1975 — DECIDED DECEMBER 4, 1975—
REHEARING DENIED DECEMBER 15, 1975.

*Dollar & Dettmering, James R. Dollar, Jr.,* for appellant.

*William Tinsley, Hartley & Reid, George C. Reid, G. Michael Hartley, Arthur K. Bolton, Attorney General,* for appellees.

JORDAN, Justice, dissenting.

I dissent from that part of the majority opinion which holds that the trial court did not err in finding that the present recall statute does not violate the provisions of the Georgia Constitution, Art. III, Sec. VII, Par. IV (Code Ann. § 2-1915) which provides in part as follows: "No office to which a person has been elected shall be abolished, nor the term of the office shortened or lengthened by local or special bill during the term for which such person was elected unless the same be approved by the people of the jurisdiction affected in a referendum. . ."

In my opinion this provision was inserted in the 1945 Constitution to qualify the ruling in *Wilson v. Harris,* 170 Ga. 800 (154 SE 388) (1930) which laid down the broad ruling that the General Assembly may abolish an office created by it before the term of the incumbent expires, may modify its duties, may shorten or lengthen the term, and increase or diminish the salary or change the mode of compensation. This of course is still the law with regard to an office which is created by the General Assembly, with the important proviso as set forth in the 1945 Constitution that it may be done only upon approval by referendum of the people of the jurisdiction affected. The recall statute involved here has not been approved by the people of Douglas County in a referendum.

The majority opinion skirts this constitutional referendum requirement by saying that the present recall statute does not affect the term of office of county commissioner and that it merely provides for an election mechanism for removing a particular person from office. This election mechanism was certainly used to shorten the term of the incumbent appellant and this affected the term "for which such person was elected."

In *Webb v. Echols,* 211 Ga. 724 (88 SE2d 625) (1955) the General Assembly passed an Act without a referendum which created a three-member Board of Commissioners of Clayton County but continued the existing sole commissioner in office as one of the three-member board until the end of his term of office. A majority of this court held that such Act did not violate the referendum provisions of Code Ann. § 2-1915, clearly indicating that a contrary result would have been reached had the sole commissioner's term of office and compensation been effected. In a strong dissent three Justices of the court were of the opinion that even under these conditions the referendum provision was violated.

Even assuming that the referendum was not required in this case it is my opinion that the Act is prospective only and applicable only to "persons elected to a term of office" after its effective date.

I respectfully dissent.