## S94A0885. LEE v. CITY OF VILLA RICA et al.
### (449 SE2d 295)

BENHAM, Presiding Justice.

Appellant Teddy Lee was elected to a four-year term as mayor of Villa Rica in November 1991, meeting all the qualifications for holding the office when he was elected and when he took the oath of office. On December 31, 1993, local legislation passed by the General Assembly (Ga. L. 1993, p. 4592) took effect, resulting in the de-annexation[1] of certain portions of Villa Rica, including the area in which Lee resided.[2] After de-annexation, Lee no longer met a qualification of office required by the Villa Rica city charter — that he reside in the city and be registered and qualified to vote in city elections during his period of service.[3] As a result, the City Council passed a resolution calling for Lee's removal from office. Contending he was entitled to serve the remainder of the term to which he had been elected, Lee filed a petition for declaratory judgment and sought an injunction against the effort to remove him from office. In an amendment, Lee sought a declaration that the de-annexation statute was unconstitutional. After the trial court granted a 30-day temporary restraining order, the City of Villa Rica and the members of the city council filed a counterclaim seeking a declaration that Lee was no longer qualified to hold the office and that the office of mayor was vacant. The trial

---

[1] Municipal boundaries may be changed only by local legislation of the General Assembly "or by such methods as may be provided by general law." OCGA § 36-35-2 (a). While an entire chapter of Title 36 is devoted to the means by which a municipality's boundaries may be changed by *annexation*, methods of de-annexation have not been similarly enacted. Thus, de-annexation may only be accomplished by passage of local legislation in the General Assembly. See Sentell, "Municipal De-Annexation: The Ins and the Outs," Georgia State Bar Journal, Vol. 27, pp. 118, 128.

[2] Local Act 201 provided:

*Section 1.* An Act providing a new charter for the City of Villa Rica . . . as amended, particularly by an Act approved March 10, 1988 (Ga. L. 1988, p. 3851), is amended by striking Section 1.125, as added by said 1988 amendatory Act, and inserting in its place a new Section 1.125 to read as follows:

"Section 1.125. The corporate limits of the City of Villa Rica shall be those existing immediately prior to the effective date of the amendment of this charter by an Act approved March 10, 1988 (Ga. L. 1988, p. 3851) and shall also include any territory in Douglas County annexed into the City of Villa Rica prior to or after the effective date of said 1988 amendatory Act."

*Section 2.* This Act shall become effective on December 31, 1993.

*Section 3.* All laws and parts of laws in conflict with this Act are repealed.

[3] Section 2.11 of the City Charter of Villa Rica contains the qualifications for office: No person shall be eligible to serve as mayor or councilman unless he shall have been a resident of the city for a period of not less than one year immediately prior to the date of the election of mayor . . . and shall continue to reside therein during his period of service and shall be registered and qualified to vote in municipal elections of the City of Villa Rica, Georgia, and unless he shall meet the qualification standards required for members of the Georgia House of Representatives, as are now or may in the future be prescribed by the Georgia Constitution. Ga. L. 1975, pp. 4575, 4586.

court ruled that the local legislation was not unconstitutional, and ordered Lee to vacate the position of mayor.[4] Lee has taken this appeal from that order.

1. Lee contends the de-annexation legislation violated the provisions of the state and federal constitutions which prohibit the enactment of bills of attainder. U. S. Const., Art. I, Sec. IX; 1983 Ga. Const., Art. I, Sec. I, Par. X.

The federal and state constitutional prohibitions against bills of attainder forbid

"legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial. [Cit.]"

*Fulton v. Baker*, 261 Ga. 710, 712 (410 SE2d 735) (1991).[5] An individual or group may be made the target of an attainder by being singled out by name or by a description of past conduct. *Selective Svc. System v. Minnesota Pub. Interest Research*, 468 U. S. 841, 847 (104 SC 3348, 82 LE2d 632) (1984). Appellant contends that, in light of the charter requirement that the mayor reside within the city limits, the de-annexation statute placing his home beyond the city boundaries singles him out for legislative infliction of the punishment of loss of his elected position. However, the de-annexation legislation is not a bill of attainder because it neither singles out Lee nor punishes him as an officeholder. Many residents of Villa Rica, one of whom was the mayor, were affected by the de-annexation of that portion of the city that was annexed in 1988. See *Nixon v. Administrator of General Svcs.*, 433 U. S. 425, 468 (97 SC 2777, 53 LE2d 867) (1977) (Congress can deprive social security benefits to Communist deportees as a group, but "it would be a bill of attainder to deprive a single, named individual of the same benefit"). Compare *Fulton v. Baker*, supra (where only one person met the criteria of the legislation condemned as a bill of attainder).

Even if the de-annexation legislation singled out Lee as one of the two officeholders who lost their qualification to hold office because they were no longer city residents, the legislation fails to punish him. In deciding whether a statute inflicts punishment, the court must

---

[4] At oral argument on May 10, 1994, counsel reported that the City of Villa Rica had conducted a special election on April 19, 1994, to fill the unexpired term of the office vacated by Lee.

[5] In *Fletcher v. Peck*, 10 U. S. 87, 136 (3 LE 162) (1810), the U. S. Supreme Court observed that the legislative branch was to prescribe *general* rules for the government of society, and that others were charged with the responsibility of applying the general rules to individual members of society.

consider

> whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes"; and (3) whether the legislative record "evinces a [legislative] intent to punish."

*Selective Svc. System v. Minnesota Pub. Interest Research Group,* supra at 852. Furthermore, the burden is on the person claiming to be the target of legislatively-imposed punishment to establish that the legislative act constitutes punishment and is not a legitimate regulation of conduct. *Nixon v. Administrator of Gen. Svcs.,* supra, 433 U. S. at 475.

The de-annexation legislation does not punish Lee as an officeholder under this test of punishment. Nothing on the face of the act suggests punitive intent on the part of the legislature, and Lee has not established that the legislation was not a legitimate regulation of conduct. In light of Lee's failure to carry his burden of proof, we conclude that the de-annexation legislation does not inflict punishment upon Lee.

2. Appellant next contends that the enactment of the de-annexation statute violated OCGA § 1-3-11, which provides:

> No office to which a person has been elected shall be abolished nor the term of the office shortened or lengthened by local or special Act during the term for which such person was elected unless the same shall be approved by the people of the jurisdiction affected in a referendum on the question.

Appellant argues that, because of the residency requirement, the de-annexation statute, a local act, shortened his term as a local elected official during the term to which he was elected, without the approval of the citizenry as expressed in a local referendum.[6]

---

[6] Prior to the enactment of § 1-3-11's predecessors (Art. III, Sec. VII, Par. IX of the 1976 Georgia Constitution and Art. III, Sec. VII, Par. XV of the 1945 Georgia Constitution), the General Assembly was authorized to abolish an office it had created before the expiration of the incumbent's term, to modify the duties of the office, to shorten or lengthen the term of office, and to increase or diminish the salary or modify the mode of compensation. *Wilson v. Harris,* 170 Ga. 800, 801, n. 3 (154 SE 388) (1930). Passage of the constitutional amendment in 1945 requiring local referendum approval of a local act abolishing an office or shortening or lengthening the term of office of the incumbent was done

> to correct an evil often practiced . . . , the use of local legislation specifically directed to amending or abolishing the term of a specified elective office to remove an incumbent or prolong his tenure.

"To abolish an office means to abrogate, annihilate, destroy, extinguish, or put an end to it. [Cits.]" *Webb v. Echols*, 211 Ga. 724, 726 (88 SE2d 625) (1955). To shorten or lengthen the term of the office means to modify the statutorily-set, definite extent of time an elective office may be held. The contested legislation at bar neither extinguished the office of mayor of Villa Rica nor modified the term of the office; rather, it, in conjunction with the city charter, only created a vacancy in the office of mayor. See *Smith v. Abercrombie*, 235 Ga. 741, 748 (221 SE2d 802) (1975). Compare *Manning v. Upshaw*, 204 Ga. 324 (3) (49 SE2d 874) (1948). We conclude that OCGA § 1-3-11 and its requirement of a local referendum is not applicable because the de-annexation act neither abolished the office of mayor of Villa Rica nor shortened or lengthened the term of office.

3. Lastly, appellant argues that he was removed from office by a procedure other than one listed in the city charter for the removal of elective officers. Ga. L. 1975, p. 4575, § 5.31. At the commencement of the hearing on Lee's petition for declaratory judgment and the defendants' counterclaim for declaratory judgment, counsel for Lee informed the court that the parties were "prepared to submit this case to your honor and let it rest in the breast of the court on the stipulated facts and on the briefs. . . ." At no time before the trial court did Lee contest the procedure that he had initiated. Lee's failure to raise an objection to the procedure before the trial court and his acquiescence in the procedure used, preclude him from asserting on appeal that improper procedure was followed.

4. In light of our opinion set forth above, appellees' motion for supersedeas or an order clarifying the scope of supersedeas under OCGA § 5-6-46 (a) is dismissed as moot.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 1994.

*George E. Butler II*, for appellant.

*Michael J. Bowers*, Attorney General, Tisinger, Tisinger, Vance & Greer, *C. David Mecklin, Jr.*, Barnhart, O'Quinn & Williams, *Michael A. O'Quinn*, for appellees.